UNITED STATES of America,
Appellant,

v.

SNYDER BROTHERS COMPANY,
Appellee.

No. 22111.

United States Court of Appeals
Fifth Circuit.

July 26, 1966.

Rehearing Denied Sept. 27, 1966.

Gewin, Circuit Judge, dissented.

Solomon Warhaftig, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harold C. Wilkenfeld, Attys., Richard M. Roberts, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Charles L. Goodson, U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., John B. Jones, Jr., Acting Asst. Atty. Gen., for appellant.

Harry C. Howard, Kirk M. McAlpin, Furman Smith, Atlanta, Ga., George B. Ramsay, Jr., Toccoa, Ga., for appellee, King & Spalding, Atlanta, Ga., McClure, Ramsay & Struble, Toccoa, Ga., of counsel.

Before TUTTLE, Chief Judge, GEWIN, Circuit Judge, and HUGHES, District Judge.

TUTTLE, Chief Judge:

We have here for determination the question whether certain twenty-year debentures subordinated to all other indebtedness of the issuing taxpayer corporation constitute an "indebtedness" within the meaning of Section 163 of the Inter-

nal Revenue Code of 1954, 26 U.S.C.A. § 163,[1] the interest upon which is allowed as a federal income tax deduction.

The facts are not in dispute. For a number of years Franklin D. Snyder and Floyd R. Snyder were engaged in the business of manufacturing industrial furniture finishes in Toccoa, Georgia, as a partnership under the name Snyder Brothers Company, in which each was an equal partner. On November 30, 1957, the Snyder Brothers transferred substantially all of the assets of this partnership to the taxpayer, a new Georgia corporation they had organized with the name Snyder Brothers Company. In exchange for the partnership assets that were transferred to the corporation, which had a book value of $450,382.87, the corporation assumed liabilities of the partnership in the amount of $202,568.13, and issued to the Snyder Brothers capital stock with a par value of $100,000, and securities entitled "Subordinated Debentures," with a stated principal amount of $140,000. The excess of the book value of the assets transferred to the corporation over the sum of the liabilities assumed, the par value of the stock issued and the stated principal amount of the "subordinated debentures" issued, amounting to $7,814.-74, were shown on the corporation's books as "paid in surplus."

As equal partners in the transferring partnership, the two brothers each received one half of the capital stock and one half of the "subordinated debentures" of the corporation.

In view of the fact that the question before us depends solely upon our construction of the instrument called "subordinated debenture" we quote the language of the document in full as an appendix to this opinion. The principal characteristics of it, however, can be seen by the following brief statement: The total amount of $140,000 was to be paid 20 years from date with interest at 6% per annum payable semiannually, with-

out, however, the right to acceleration of the entire indebtedness upon default of interest payments. They provided expressly that they should be subordinated to all indebtedness of the corporation, whether already incurred or to be incurred at any time in the future. No limit was placed upon the amount of such prior indebtedness. No limit was placed on the payment of dividends to stockholders. The right of all other creditors to receive payment in full of principal and interest on their claims was provided for in case of liquidation, bankruptcy or insolvency, or in the event of a default in payment of interest or principal to the holders of the "debentures." "Debentures" could be transferred only on the books of the company by proper written assignment executed by the registered holder and presentation of the "debenture" at the office of the company. In other respects the "debentures" were in the form of an absolute promise to pay a fixed principal sum 20 years from date.

Subsequent to the issue of these instruments, the taxpayer made semiannual payments as required therein. These payments were shown as "interest" on the taxpayers' books. The taxpayer sought to deduct the payments as interest for federal income tax purposes. The Commissioner of Internal Revenue disallowed these deductions on the ground that the "subordinated debentures" did not truly represent an "indebtedness," within the meaning of Section 163(a) of the Internal Revenue Code of 1954, but rather represented an investment in the company in the nature of a stock investment. The taxpayer paid the assessed deficiency and in due course instituted this suit for refund in the District Court. In that court, the facts having been stipulated, both parties moved for a directed verdict. The trial court directed a verdict in favor of the taxpayer and following judgment being entered on the verdict, the government subsequently filed a motion for judgment notwithstanding the verdict,

1. "Section 163. Interest.
  (a) General Rule. There shall be allowed as a deduction all interest paid or

accrued within the taxable year on indebtedness."

and in the alternative, for a new trial. This motion was denied and this appeal followed.

We conclude that the issue here to be decided is one of law. Upon a careful consideration of the statute and the many decisions of the courts construing it, we conclude that the issue should have been decided in favor of the government. We therefore, reverse for the entry of a judgment against the taxpayer.

The question whether an advance of money or transfer of property by persons who are the sole stockholders of a corporation to their wholly owned corporation in return for a promise to repay such advances, creates an indebtedness within the contemplation of the Internal Revenue laws, or amounts to contribution to capital or an increase in the capital investment by the stockholders, is not a new one. It has been considered many times by many courts, including this court. After carefully reviewing decisions of the courts struggling with this problem, we conclude that one of the best statements of the problem is contained in an opinion written by Judge Waterman, for the Court of Appeals for the Second Circuit, in Kraft Food Company v. Commissioner of Internal Revenue, 2 Cir., 232 F.2d 118, at page 123. There the court said:

> "Section 23(b) of the applicable Revenue Acts provides that in computing net income 'there shall be allowed' as a deduction 'all interest * * * indebtedness' (with exceptions not pertinent here). The crucial word, of course, is 'indebtedness.' In general, 'The words "interest on indebtedness" should be accorded their usual, ordinary and every day meaning.' Preston v. Commissioner, 2 Cir., 1940, 132 F. 2d 763, 765. If they were always accorded that meaning, however, the determination that a particular instrument had created an 'indebtedness' enforceable under corporate law would settle conclusively the treatment for federal tax purposes of any payments

made pursuant to the instrument. It is now a commonplace that words have many meanings, each dependent upon their context. Thus, 'indebtedness' as used in a federal taxation statute may not carry the same meaning as the same word used in the context of corporate finance. As the Supreme Court has said, 'although an indebtedness is an obligation, an obligation is not necessarily an "indebtedness" within the meaning of § 23(b).' Deputy v. Du-Pont, 1940, 308 U.S. 488, 497, 60 S.Ct. 363, 368, 84 L.Ed. 416. Our present problem is whether there is some paramount policy of federal tax law which requires in this case that taxpayer's payments pursuant to its debentures be considered, for tax purposes, as 'dividends' rather than 'interest * * * on indebtedness.' "

We fully agree with this statement of the issue. We also agree with the following comment, which answers the appellee's contention here that the government does not attempt to place its right to a reversal by proving different "intent" of the parties to the transaction than as indicated on the face of the documents:

> 'Numerous cases are concerned with the question whether a particular interest in a corporation is an equity or debt interest. The vast majority of these cases have involved "hybrid securities"—instruments which had some of the characteristics of a conventional equity issue. When such hybrid securities are involved the problem of characterization is one of considering each case on all of its facts. See John Kelley Co. v. Commissioner (Talbot Mills v. Commissioner), 1946, 326 U.S. 521, 698, 66 S.Ct. 299, 90 L. Ed. 278. In the present case, however, the instruments involved are entirely conventional in form and contain no ambiguity on their face. In such a case we think the problem is not one of ascertaining "intent," since the parties have objectively manifested their intent. It is a problem of whether the

intent and acts of these parties should be disregarded in characterizing the transaction for federal tax purposes.'

This is not like the case of Rowan v. United States, 5 Cir., 219 F.2d 51, decided by this court, in which there were facts and circumstances that were ambiguous. There we said that the element of intent was necessary because in that case there were advances made that could, according to the intent of the parties, be either contributions to capital or loans to be repaid. In such a case, of course, the "intent" of the parties could be controlling.

■ We commence with the undisputed proposition that the relationship between a corporate taxpayer and its stockholders may be absolutely clear and binding so far as their relationships are concerned, but that for income tax purposes, such relationships may be something quite different. As stated by Judge Learned Hand in his dissenting opinion in Gilbert v. Commissioner, 2 Cir., 248 F.2d 399, (dealing with a legal proposition not in dispute in that case between him and the majority of the court), "However, it is also settled that, although the rights of a taxpayer may be absolute as between himself and his corporation, the law will at times refuse to regard those rights in assessing his income tax. That doctrine stems from Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; at least that is the source usually ascribed to it. It is a corollary of the universally accepted canon of interpretation that the literal meaning of the words of a statute is seldom, if ever, the conclusive measure of its scope."

In Gregory v. Helvering, a case in which the Supreme Court had for decision the question whether a corporate reorganization had taken place under the terms of Section 112 of the Revenue Act of 1928, with the attendant tax benefits resulting from such reorganization, the Court concluded that while there was in fact every step that was required to be taken to result in a corporate reorganization, there was, nevertheless: "Simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object in accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of the corporate shares to the petitioner." The Court held that the taxpayer's plan could not succeed because "the transaction upon its face lies outside the plain intent of the statute. To hold otherwise would be to exhault artifice above reality and to deprive the statutory provision in question of all serious purpose."

So, too, here, the government contends that to hold this document to create an indebtedness "lies outside the plain intent of the statute." The government places its argument principally on the proposition that these subordinated debentures created rights in the holders that do not significantly vary from those of preferred stockholders.

■ Taxpayer counters with the argument that the courts have repeatedly held that an "indebtedness" may be validly created by the advance of money by stockholders to their wholly owned corporation; that the identity of ownership does not, *of itself*, prevent the advance from being treated as an indebtedness. This, of course, is undisputed. This was fully recognized by this court in Rowan v. United States, supra. The government does not dispute this basic proposition. It is, however, a circumstance to be considered when there are additional facts that cast doubt on the transaction.

Next, says the taxpayer, the *mere fact* of subordination of the indebtedness to all other creditors does not change the obligation into an investment in the company's capital.´ This, too, must be without dispute, bearing in mind, of course, that the proposition is that subordination *standing alone* does not change the character of the obligation.

■ The difficulty here is that this is not simply a case of an attempt to create

a debt relationship between the sole stockholders and their corporation, nor is it simply a case of a debenture being subordinated to other creditors. It is *both* of these things. Moreover, it contains a number of other characteristics which, when taken together, we conclude go farther towards eliminating any difference between the holders of these debentures and preferred stockholders than any case that has been called to our attention. One of these is the long term (20 years) of the debentures; another is the fact that they are unsecured; another is the absence of any limitations on the amount of payment of dividends and the absence of provision for any sinking fund or reserve out of which payment *after all other obligations are paid,* can be reasonably assured.

The taxpayer relies heavily on the case of Commissioner of Internal Revenue v. O. P. P. Holding Corporation, 2d Cir., 76 F.2d 11. However, there is a very significant circumstance in that case which does not appear here. There the corporation obligated itself to pay no dividends to its stockholders as long as any interest payments on the debenture bonds remained unpaid. Here the contrary is true. Every dollar of net profits each year during the twenty-year period could be paid out in dividends to the common stockholders without objection from the holders of these "debentures."

█ The taxpayer further relies on John Kelley Company v. Commissioner of Internal Revenue, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278, in which case the Supreme Court reversed the judgment of the United States Court of Appeals for the Seventh Circuit, with an opinion written by then Circuit Judge, later Mr. Justice Minton, and reinstated a decision of the Tax Court, 1 T.C. 457. While it is true that the facts in the case of the *John Kelley Company,* in which the taxpayer prevailed, are somewhat similar to those in the case before us, it must be pointed out that this case has no precedential value beyond that of any other decision of the Tax Court, because the Supreme Court decision finally affirming the Tax Court's decision, was based on the *Dobson* rule, Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, which was to the effect that the Courts of Appeal should not reverse decisions of the Tax Court where the expertise of the judges of that court may be considered to have an important bearing upon its decisions. It must be borne in mind that the 1948 amendment to Section 1141(a) of the Internal Revenue Code of 1939 repealed the rule of *Dobson* and made decisions of the Tax Court reviewable by Courts of Appeals in the same manner as decisions of the District Court. See Benton v. Commissioner, 5 Cir., 197 F.2d 745.

Moreover, the *Kelley* case was a companion case in the Supreme Court with the case of Talbot Mills v. Commissioner of Internal Revenue. In the *Talbot Mills* case the Supreme Court affirmed the judgment of the Court of Appeals for the First Circuit in line with the *Dobson* rule, because that appellate court had in turn affirmed a decision of the Tax Court. In the *Talbot Mills* case the Tax Court, on slightly different facts, had held that the debentures that were in all essential details similar to the debentures in the *John Kelley Company* case, except that the payments of interest were not cumulative (see 326 U.S. 521–523, 66 S.Ct. 299, 90 L.Ed. 278) were not "indebtedness," but amounted to preferred stock.

Here the government lays great stress upon the fact that the provisions of these debentures relating to the subordination of this obligation to pay off all other creditors of the company whenever such other debts are created, make practically ineffectual what otherwise appears to be an absolute obligation to pay interest regularly and to pay the principal on a specified date. It is plain, as the government points out, that the holders of the "debentures" are practically helpless if the Snyder Bros. Company should decide, for any reason, not to pay interest when due or the principal on its maturity

date. In such event, the company is under contractual obligation to notify all the existing creditors, and all of the outstanding debts of the company, whether of later maturity date or not, automatically become due and payable in advance of any payments to the debenture holders. Whether this would, in fact, be a means by which the company could coerce the debenture holders into agreeing to an extension of the otherwise specific dates of payment, it is plain that the hazard of forcing collection upon default[2] makes much less certain that the debentures will be paid off in accordance with their terms than is apparent simply from the face of the debentures themselves.

Recognizing, as we must, that there is nothing to guarantee to the debenture holders that they can collect the face amount of the debentures, or even collect a past-due payment, without forcing the company into liquidation in the sense that it will be required to raise sufficient cash to pay off all its existing creditors including the debenture holders, and recognizing the well known economic fact stated so succinctly by appellee's counsel in their brief that even all ordinary creditors, who have a right to share *pari passu,* rarely get the face amount of their claims, we think it is plain that upon the admitted facts of this record the documents denominated "subordinated debentures" do not create the kind of "indebtedness" which Congress had in contemplation in enacting Section 163.

What we have decided here is wholly consistent with the decision of this court in United States v. South Georgia Railroad Company, 5 Cir., 107 F.2d 3. It is in no way inconsistent with the decision of this court in Rowan v. United States, supra. While it is true that in the *Rowan* case we decided that the advances there did create an indebtedness within the contemplation of the statute, we called attention to the fact that a number of the circumstances that are present in this case were not present in the relationship between the stockholders and their corporation there. For instance, we said: "There are in this case none of the facts authorizing other inferences to be drawn, such as that the initial payments, both capital and advances, were all made for acquisition of capital assets, as in Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., 7 Cir., 132 F.2d 182, and Matthiessen v. Commissioner, 2 Cir., 194 F.2d 659 [It will be remembered that in this case both capital and advances "were made for acquisition of capital assets."]; * * * or subordination to other indebtedness [Here, to the contrary, there is subordination to all other indebtedness]; or inordinately postponed due date [Here there is a 20 year due date before which no claim can be asserted against the corporation]; * * * or payment of advances as initial funds to start the corporate life, as in Janeway v. Commissioner, 2 Cir., 147 F.2d 602 [Here, to the contrary, the payment of the amount representing the $140,000 of debentures by transfer of the partnership interest to the corporation, did stand as "initial funds to start the corporate life."]; one of which or a combination of which is present in the usual case of this type that comes before the appellate courts" 219 F.2d 51, at page 55. Thus it is apparent that a number of the things are present in the case before us that we specifically noted were not present in the *Rowan* case. The net of the matter is that for us to construe this document under these circumstances as an "indebtedness" would be to give substance to a "transaction [which] upon its face lies outside the plain intent of the statute" 293 U.S. 465, 470, 55 S.Ct. 266, 268.

The Judgment is reversed and the case is remanded to the District Court for the entry of judgment in favor of the United States.

2. Such a hazard is certainly recognized by the appellee in this case, for counsel say in their brief here: "It is a matter of common knowledge that when businesses go into bankruptcy or receivership the creditors frequently receive only a small percentage, or nothing, on their claims."

APPENDIX
to

NO. 22,111
UNITED STATES v. SNYDER
BROTHERS COMPANY
6% Subordinated Debenture
Snyder Brothers Company
Toccoa, Georgia
DUE DECEMBER 1, 1977

For value received, the undersigned SNYDER BROTHERS COMPANY, a Georgia Corporation, and herein referred to as "The Company" hereby promises to pay to the registered holder hereof, on December 1, 1977, at the principal office of the Company in Toccoa, Georgia, the principal sum of Five Thousand and No/100 Dollars with interest from date at Six per cent per annum, payable semi-annually on June 1 and December 1 in each year.

This debenture is transferable only on the books of the Company by proper written assignment duly executed by the registered holder hereof and the presentation of this debenture at the office of the Company in Toccoa, Georgia, for notation of such transfer hereon and on the books of the Company. The Company may deem and treat the registered holder of this debenture as the absolute owner thereof for all purposes. The Company may make payment of interest hereon by mailing check to the registered holder at the address shown on the books of the Company, provided such check is duly paid upon due presentation thereof to the bank on which drawn. The Company may refuse to make any requested transfer until furnished with evidence satisfactory to it that the transfer has been duly executed by the registered holder hereof and that such registered holder is duly authorized to make such requested transfer.

The Company shall have the privilege of redeeming this Note at any time prior to maturity at the office of the Company in Toccoa, Georgia, by giving 30 days notice in writing by mail addressed to the person in whose name this Note is registered and by paying the principal amount thereof plus accrued interest.

This Note is one of a series of Subordinated Debentures (hereinafter referred to as "Notes") aggregating $140,000.00 in principal amount, issued or about to be issued by the Company, all of which will become due on December 1, 1977. All the Notes of this series are payable pari passu, and the holders shall have no preference over each other.

Anything in this Note to the contrary notwithstanding, the indebtedness evidenced by this Note and all Notes of this series shall be subordinate and junior in right of payment, to the extent and in the manner hereinafter set forth, to all indebtedness of the Company whether outstanding at the date of this Note or incurred and not subordinated after the date of this Note, (such indebtedness of the Company to which the Notes are subordinate and junior being sometimes hereinafter referred to as "Superior Indebtedness"):

(a) In the event of any insolvency or bankruptcy proceedings, or any receivership, liquidation, reorganization or other similar proceedings in connection therewith, relative to the Company or to its creditors, as such or to its property, and in the event of any proceedings for voluntary liquidation, dissolution or other winding up of the Company, whether or not involving insolvency or bankruptcy, then the holders of the Superior Indebtedness shall be entitled to receive payment in full of all principal and interest on all Superior Indebtedness before the holders of the Notes are entitled to receive any payment on account of principal or interest upon the Notes, and to that end the holders of the Superior Indebtedness shall be entitled to receive for application in payment thereof any payment or distribution of any kind or character, whether in cash or property or securities, which may be payable or deliverable in any such proceedings in respect of the Notes; and

(b) In event the principal or any interest payment on these Notes becomes in default, then the holders of the Superior

Indebtedness outstanding at the time of such default shall be entitled to receive payment in full of principal and interest on all Superior Indebtedness before the holders of the Notes are entitled to receive any payment on account of the principal or interest upon the Notes.

No present or future holder of Superior Indebtedness shall be prejudiced in his right to enforce subordination of the Notes by any act or failure to act on the part of the Company. The provisions of the preceding paragraph and its two sub-paragraphs are solely for the purpose of defining the relative rights of the holders of Superior Indebtedness on the one hand, and the holders of the Notes on the other hand, and nothing herein shall impair, as between the Company and the holder of any Note, the obligation of the Company, which is unconditional and absolute, to pay to the holder hereof the principal and interest thereon in accordance with its terms, nor shall anything herein prevent the holder of a Note from exercising all remedies otherwise permitted by applicable law or hereunder upon default, subject to the rights, if any, under the preceding paragraph and its two sub-paragraphs of holders of superior indebtedness to receive cash, property or securities otherwise payable or deliverable to the holders of the Notes.

The Company agrees, for the benefit of the holders of Superior Indebtedness, that in the event the principal or any interest payment on this Note becomes in default:

(a)   The Company will give prompt notice in writing of such happening to the holders of Superior Indebtedness, and (b)   all Superior Indebtednesss shall forthwith become immediately due and payable upon demand, regardless of the expressed maturity thereof.

IN WITNESS WHEREOF, Snyder Brothers Company has caused this Note to be executed in its name by its President and attested by its Secretary, and its seal affixed, at Toccoa, Georgia, this December 2nd, 1957.

SNYDER BROTHERS COMPANY
(SEAL)

By (Floyd R. Snyder)   /s/
ATTEST:
/s/ (Franklin D. Snyder)

GEWIN, Circuit Judge (dissenting):

The majority opinion is anchored to two premises which I conceive to be misconceptions of the law, and therefore I respectfully dissent.

The misconceptions mentioned are expressed in the following language:

(a)   "The difficulty here is that this is not simply a case of an attempt to create a. debt relationship between the sole stockholders and their corporation, nor is it simply a case of a debenture being subordinated to other creditors. It is both of these things."

(b)   "It is plain, as the government points out, that the holders of the 'debentures' are practically helpless if the Snyder Bros. Company should decide, for any reason, not to pay interest when due or the principal on its maturity date."

The cases on this subject are myriad, and it is readily admitted that the question presented is difficult.   In many cases of this nature the pertinent inquiry relates to whether the parties *intended* to create a debt or to make a capital investment.   For example in Rowan v. United States (5 Cir. 1955) 219 F.2d 51 at 54 we stated:

"But it is said that whether an advance is a loan or is capital depends on the intent of the parties, and this intent is to be ascertained from all relevant facts and circumstances.   In stating this proposition, the brief for the United States cites two cases decided by this Court, Arnold v. Phillips, 5 Cir., 117 F.2d 497 and United States v. South Georgia Ry. Co., 5 Cir., 107 F.2d 3.   This   is   undoubtedly   the   law * * *."

This issue is not present in this case, however, because in its reply brief the Government states that *intent* is not an issue to be resolved but that the only question is whether the debentures *on their face* constitute an "indebtedness."[1]

It is the Government's position that the debentures are not an "indebtedness" because there is, in effect, *no fixed date* at which the obligation of the taxpayer to pay principal and interest can be enforced by the holders. It arrives at this conclusion through the following rather tortuous exegesis of the terms of the securities themselves. The debentures state that upon failure to pay either principal or interest, all superior creditors "shall be entitled to receive payment in full" before the debenture holders "shall be entitled to receive any payment * * *" The Government construes this language to mean that all superior creditors *must be paid in full before the debenture holders can enforce their rights*. Thus, payment on the securities can be indefinitely postponed by the failure (through collusion or complacency) of any single superior creditor to demand his money; and the corporation can extort an infinite number of *extensions* on the debentures by simply threatening a default which would give rise to such a situation.

It is quite clear that subordination standing alone does not destroy "indebt-edness."[2] Commissioner v. O.P.P. Holding Corp., 76 F.2d 11, 12 (2 Cir. 1935). See also John Kelley Co. v. Commissioner, 326 U.S. 521 (1946); Kraft Foods v. Commissioner, 232 F.2d 118, 125–126 (2 Cir. 1956).

I find the following language from the Second Circuit in Commissioner v. O.P.P. Holding Corp., supra, at page 12 to be the most pertinent expression available on the nature of an "indebtedness" as distinguished from an equity investment:

"We do not think it fatal to the debenture holder's status as a creditor that his claim is subordinated to those of general creditors. The fact that ultimately he must be paid *a definite sum at a fixed time* marks his relationship to the corporation as that of creditor rather than shareholder. The final criterion between creditor and shareholder we believe to be the *contingency* of payment. The shareholder is entitled to nothing, prior to liquidation, except out of earnings. Even on liquidation, at least in New York, arrears of cumulative dividends are confined to earnings. Michael v. Cayey-Caguaa Tobacco Co., 190 App.Div. 618, 180 N.Y.S. 532. These debenture bondholders were not so limited. The interest could be deferred, but it was not lost, though the company had no earnings; it could be collected, together with the principal, in 1954, from the

---

1. In its original brief the Government appeared to raise the question of intent by the following language:

   "In the instant case, it is clear that the Snyder brothers *intended* to and actually did commit the partnership assets that they transferred to the corporation upon its organization to the risks of the corporate venture." (Emphasis added)

   In its reply brief here, however, the following statement is made:

   "On the other hand, in the instant case the *intent* of the parties is not at issue, for there is no contention that the 'Debenture' holders would not seek to enforce the 'Debentures' to the extent that the terms of the 'Debentures' permitted this. Whether the 'Debentures' constituted a capital investment or indebtedness depends not on a de-termination of anyone's *intent* but rather on a characterization of the instrument here involved." (Emphasis added)

2. In effect the Government recognizes this principle by the following statement in its initial brief:

   "This is not to say that one advancing funds to a corporation cannot subordinate his claim to certain claims of other creditors and still be a creditor of the corporation. One who is unwilling to commit his funds to the risks of the corporation's business may still be willing to allow certain of its other obligations to be satisfied out of its assets prior to satisfaction of his own claim, where it appears that there would still be sufficient assets to provide security for his own claim."

corpus of the debtor's property, regardless of whether there should be a surplus. See Warren v. King, 108 U.S. 389, 399, 2 S.Ct. 789, 27 L.Ed. 769. This distinction marks the vital difference between the shareholder and the creditor. The shareholder is an adventurer in the corporate business; he takes the risk, and profits from success. The creditor, in compensation for not sharing the profits, is to be paid independently of the risk of success, and gets a right to dip into the capital when the payment date arrives." (Emphasis added)

See also Rowan v. United States, supra. In the present case, there is an *expressed* obligation to pay principal and interest at fixed dates. Therefore, the ultimate question is whether, as the Government contends, the debentures are so worded that payment can be postponed or extended *indefinitely* so as to avoid payment as a matter of law.

While it is true that the debentures provide that superior creditors shall be paid in full before the holders can receive any payment, they also expressly reserve to the holders *all other rights* available at law. The law of Georgia controls the remedies of the debenture holders as against the corporate taxpayer. Notwithstanding the subordination provision, they also clearly and unequivocally provide that nothing shall impair the unconditional and absolute obligation of the company (taxpayer) to pay to the holders of the debentures the principal and interest, or diminish the legal remedies of the holders upon default.

The majority seems to admit that the creation of a debt between the debenture holders and the corporation in the circumstances here present would not be objectionable. Likewise, it is admitted that subordination is not fatal to the taxpayer's position. But the majority will not tolerate both. I cannot agree. Such reasoning will allow a debt but never subordination. Subordination is not condemned but is an approved business practice. The taxpayer usually gets in trouble when the facts show a "thin incorporation" where the ratio of capital to debt financing reflects a gross imbalance; where there is an absence of business purpose in the transaction; or when the value of the property transferred to create the debt is less than the amount of the debt created. The facts and circumstances of this case clearly show an absence of any of these condemned practices. There is not present any capital and debt inbalance; there is a valid business purpose; and no one has questioned the value of the assets transferred.

I construe these provisions simply to mean that whenever there is default on the debentures, all other indebtedness becomes due and all superior creditors are to be given a *preference* in payment over the debenture holders. I discern nothing therein which would prevent a debenture holder from obtaining payment, either from earnings or surplus, once the superior indebtedness is paid.[3] Nor is there any reason why the holders could not sue to enforce the obligations, even if the superior creditors fail to demand payment.

The majority is simply in error when it agreed with the Government that the debenture holders "are practically helpless" if the taxpayer refuses to pay principal or interest when due, "for any reason". The law of Georgia is clearly to the contrary. A recent Georgia case so holds. Commercial M & F Corp. v. North American Investors, 111 Ga.App.

---

3. It is significant to note that factually the business involved was apparently a successful and lucrative one. During the last five years of its existence the partnership earnings ranged from approximately $45,000 to $96,000 per year, and in 4 of the 5 years the annual earnings exceeded $80,000. The taxable income of the corporation for the fiscal years 1959 and 1960 was $78,586 and $38,743 respectively. The accumulated earnings at the end of fiscal 1960 were $84,751.00 and its net worth was $192,461.00. After the corporation was organized and the debentures were issued, its net worth was approximately $108,000.00 based on book values.

355, 141 S.E.2d 768 (1965).[4] In Georgia, an obligee can sue on an instrument containing a subordination clause and obtain a judgment. Unless there is a provision in the subordination agreement which precludes suit on the instrument, the cited Georgia case holds that it is immaterial in a suit seeking judgment that there are any outstanding claims of general creditors of the maker on the date payment is due on the note. In the event judgment is recovered, the provisions of the subordination agreement might affect the *enforcement* and *collection* of the judgment, but would not constitute a bar to *obtaining judgment*. Only *other creditors* can then raise the subordination provision as an obstacle to the enforcement of the judgment. In short, the taxpayer here has a definite legal obligation to pay principal and interest *at a fixed date,* and the debentures *on their face* constitute a valid indebtedness. The majority opinion fails to consider this important case in the Georgia jurisprudence. The judgment of the District Court should be affirmed.

## ON PETITION FOR REHEARING

Before TUTTLE, Chief Judge, GEWIN, Circuit Judge, and HUGHES, District Judge.

### BY THE COURT:

By its motion for rehearing, appellant complains that in our opinion we stated, "We conclude that the issue here to be decided is one of law." In appellee's post-argument brief, it is stated, "We again call attention to the fact that the Government now states that the only issue in this case is whether the debentures on their face constitute indebtedness * * *. On that assumption, it is clear, as the court noted on oral argument, that there is no question of fact for the jury, since the interpretation and construction of a contract is a question of law for the courts. Ga.Code, Section 20-701 (1933); Williston on Contracts, Section 616, Note 7; Encyc. of Georgia Law: Contracts, Section 51." The only question before the court here is whether the debentures on their face constitute indebtedness when issued under the circumstances of this case, as to which there is no dispute of fact. Thus there is nothing before the court except a legal question.

As a matter of law, the debentures here in question do not create a "debt" within the contemplation of the applicable statute.

The motion for rehearing is denied.

GEWIN, Circuit Judge, dissents.

---

4. The Court makes incidental reference to the fact that the subordination agreement involved terminated on the due date of the note. The opinion, however, seems to be based on an assumption that collection of the note was subject to the subordination agreement.