UNITED STATES of America,
Appellant,
v.
W. B. and Edna B. WILLIAMS,
Appellees.

No. 24416.

United States Court of Appeals
Fifth Circuit.
May 24, 1968.

Floyd M. Buford, U. S. Atty., Macon, Ga., Mitchell Rogovin, Asst. Atty. Gen., Richard C. Pugh, Lee A. Jackson, Harry Marselli, Harry Baum, Donald A. Statland, Jonathan Cohen, Attys., Dept. of Justice, Washington, D. C., for appellant.

Cubbedge Snow, Macon, Ga., for appellee.

Before TUTTLE. BELL and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This appeal involves a deficiency in income tax for the year 1956 in the amount of $108,839.06, plus interest and costs.

The sole issue presented is whether a sum of money received by appellee Williams (sometimes herein, taxpayer) constituted a loan or prepayment of rent. The proceeds are taxable only if determined to be prepayment of rent.[1]

Williams owned timber lands in four counties in Georgia. On December 28, 1956, he entered into a written agreement granting Owens-Illinois Glass Company the right to cut and purchase timber growing on his land for a period of sixty-six years. Williams was to receive a minimum yearly payment based on an average yield of one cord per acre. Payment was set at $3 per cord, to be increased or decreased by variations in the wholesale price index, with minimum payment set at $2.62 per cord. The agreement covered 6,885 acres, but the first year payment was for only 6,525 acres, title being defective as to the 360 additional acres.

The agreement provided that Owens-Illinois was to pay an initial sum of $19,575.00 for the first year's timber purchase, plus $176,175.00, which was termed a "loan" from Owens-Illinois to taxpayer. The contract further provided that the taxpayer would repay the loan at three percent interest by crediting against it the yearly payments due to him from Owens-Illinois for the use of the land and timber. Owens-Illinois recorded the repayment of the "loan" on its books as a loan and offset the annual payments due to Williams under the agreement.

Subsequent to the execution of the December 28, 1956, agreement, the taxpayer transferred certain of the lands covered by the agreement to a newly formed corporation, Williams Farms, Incorporated. In connection with the transfer, Owens-Illinois required the new

---

1. Section 61. Internal Revenue Code of 1954; Treasury Regulations on Income Tax (1954 Code), § 1.61–8.

corporation to execute an agreement guaranteeing a repayment of the "loan". The Owens-Illinois representatives stated that the same guarantee would have been required by the company if the sum in question had been considered as an advance rental payment.

Williams reported the $19,575.00 payment as income received on his return for the year 1956, but did not report any portion of the $176,175.00 "loan" payment as income. The Commissioner treated the latter amount as prepayment of rent, and included in it the taxpayer's 1956 income. Williams paid the resulting tax deficiency, and upon denial of his claim for refund timely brought this suit for refund. A jury trial was requested. The sole question to be decided at the trial was whether the $176,175.00 was taxable as income for 1956: whether the payment was to be treated for federal income tax purposes as a loan or as a prepayment of rent. Pending the outcome of trial on this issue, two other issues[2] were deferred. The parties filed cross motions for summary judgment. The district court granted summary judgment in favor of the taxpayer without opinion. The government appealed. We reverse.

■ We begin with the well recognized premise that in federal tax cases the substance and reality of a transaction, rather than its form, is decisive. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945); Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929). Rental payments are clearly taxable as income.[3] It is equally well settled that a payment received in advance by a taxpayer, without restriction as to its use, for consideration to be subsequently furnished, is taxable in the year received. Schlude v. Commissioner of Internal Revenue, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963); American Automobile Ass'n v. United States, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961). This same rule applies to prepayments of rent. Kohler-Campbell Corp. v. United States, 4 Cir. 1962, 298 F.2d 911; New Capital Hotel, Inc. v. Commissioner of Internal Revenue, 6 Cir. 1958, 261 F.2d 437; South Dade Farms, Inc. v. Commissioner of Internal Revenue, 5 Cir. 1943, 138 F.2d 818; Astor Holding Co. v. Commissioner of Internal Revenue, 5 Cir. 1943, 135 F.2d 47, 146 A.L.R. 993.

The primary thrust of the taxpayer's argument is: (1) the intentions of the contracting parties should be given controlling weight, and (2) the entire transaction is a loan by virtue of the requirement that the taxpayer pay three percent interest on the sum "advanced" or "loaned" by Owens-Illinois.

■ As to the first point, there is little doubt but what the intent of the taxpayer is sometimes considered *a* factor. Kohler-Campbell Corp. v. United States, supra; Atlantic Refrigerating Co. v. Commissioner, 1942, 382 B.T.A. Memo Dec., p. 943. However, it is too well settled to warrant extensive cita-

2. The parties entered into the following stipulation:
   If the issue [whether the $176,175.00 is a loan or prepayment of rent] is decided for the Government then two other issues will be involved.
   II.
   Under the contract was this a disposal of timber as contemplated under the statute (26 U.S.C., Sec. 631) as would entitle the taxpayer to treat all payments received under this agreement as long term capital gains?
   III.
   Even if his contract does not entitle the taxpayers to treat all payments received under the contract as long term capital gains, what was the fair market value of the timber existing at the date of the contract (merchantable timber of cutting size and smaller young growth of the appraisable value)? The determination of this issue might require a lengthy trial.
   The parties respectfully request the Court to defer the determination of these last two issues until after the first issue is determined.

3. Note 1, supra.

tion of authority that the intention of a taxpayer does not conclusively determine the tax consequences of his action, Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), but rather that what was actually done is determinative of the tax treatment. Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001 (1924); Carlton v. United States, 5 Cir. 1967, 385 F.2d 238; United States v. Snyder Brothers Company, 5 Cir. 1966, 367 F.2d 980.

■ In appropriate circumstances, the intent of the parties should be disregarded for federal tax purposes. United States v. Snyder Bros. Company, supra. This is such a case.

■ Many facts and circumstances refute the taxpayer's assertion that the existence of a loan has been independently established. There was no definite date on which the "loan" was repayable to Owens-Illinois; thus a fundamental characteristic of a loan was absent. Kohler-Campbell Corp. v. United States, supra.

No promissory note was ever executed, a factor of considered importance in Atlantic Refrigerating Co. v. Commissioner, supra.

It is also important to notice the interdependence of the lease and the "loan". It is undisputed that there would have been neither without the other. There was no attempt by Williams to negotiate a loan separate and apart from the lease agreement.

Several other facts interestingly indicate that the amount "loaned" to Williams was calculated and determined in direct relation to the annual rental payments. At the outset of negotiations Williams sought "an *advance* of $45 per acre * * * at three percent per annum with the entire proceeds of the lease assigned until the entire indebtedness is liquidated." (Emphasis added). Owens-Illinois replied with an offer of $30 per acre, which was ultimately accepted.

The mathematics of the transaction are interesting, relevant and quite damaging to taxpayer's position. A "loan" of $45 per acre (the amount initially requested by taxpayer) on a lease of 6,525 acres would come to $293,625.00, which equals fifteen years rent (15 x $19,575.-00) exactly. On the other hand, ten years rent would be $195,750.00 (10 x $19,575.00), which exactly equals a "loan" of $30 per acre for 6,525 acres.

Applying these simple computations to the facts Williams was paid $19,575.00 as the first year's payment plus the "loan" of $176,175.00 for a total of $195,-750.00. This amount, as revealed above, is precisely equal to ten years rent. The conclusion is virtually inescapable that the taxpayer initially demanded an advance or prepayment of fifteen years rent as a condition to the execution of the lease to Owens-Illinois, and further that, after negotiation, Owens-Illinois persuaded Williams to accept a ten year prepayment of rent.

The taxpayer's final contention is that great weight should be given the fact that three percent interest was to be paid on the $176,175.00 to establish conclusively that the transaction was a loan. The charging of interest is a relevant factor supporting the taxpayer's contention, Van Wagoner v. United States, 5 Cir. 1966, 368 F.2d 95; Clinton Hotel Realty Corp. v. Commissioner of Internal Revenue, 5 Cir. 1942, 128 F.2d 968, but it cannot carry the day in the present setting. We view the interest charge as no more than compensation for advance payment. Commissioner of Internal Revenue v. Lyon, 9 Cir. 1938, 97 F.2d 70.

The terms of the agreement, its formality and structure, cannot disguise the economic reality of the transaction. The judgment of the district court is reversed with directions to enter judgment for the government, and to proceed to trial on the two deferred issues.

Reversed, with directions.

BELL, Circuit Judge (concurring in part and dissenting in part):

I concur in the opinion of the majority save as to disposition. I respectfully dis-

sent from that portion of the opinion which directs that judgment be entered for the government.

The government conceded on argument that no tax would be due if the taxpayers had used the timber lease as collateral to borrow the same amount of money from a bank or some other lending institution. There has been no evidentiary hearing and we do not know what additional evidence, if any, might be adduced on the question of loan *vel non*. It would seem to me, as is often true where a case has been terminated by summary judgment, that the more prudent disposition would be simply to reverse and remand, thus leaving the question of further proceedings open for the District Court.