W. O. Covey, Inc. v. Commissioner.
W. O. Covey, Inc. v. Commissioner
Docket No. 4518-67.
United States Tax Court
T.C. Memo 1969-273; 1969 Tax Ct. Memo LEXIS 24; 28 T.C.M. (CCH) 1379; T.C.M. (RIA) 69273; December 15, 1969, Filed Robert W. Tunnell, Race St., P.O. Box 151, Georgetown, Del., for the petitioner. Bert W. Hunt for the respondent. SCOTT
Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income taxes for the fiscal years ended March 31, 1963 and March 31, 1964, in the amounts of $1,820 and $931.36, respectively. The issue for decision is whether petitioner is entitled to deduct as interest, payments made in 1963 and 1964 to Julia E. Covey with respect to an instrument in the form of a demand note which petitioner gave to Julia E. Covey on January 2, 1958, in exchange for 240 shares of petitioner's common stock. Findings of Fact Some of the facts have been stipulated and are found accordingly. W. O. Covey, Inc. (hereinafter referred to as petitioner) is a Delaware corporation with its principal place of business at the date of the filing of the petition in this case in Seaford, Delaware. Petitioner filed its Federal corporate income tax returns for its fiscal years ending March 31, 1963 and March 31, 1964, on an accrual method of accounting. These returns were filed with the district director of *26 internal revenue, Wilmington, Delaware. Petitioner was incorporated as a successor to the business of a sole proprietorship engaged in food distribution which was founded in 1923 by William O. Covey, Sr. The incorporation of the business was in 1935 shortly after the death of William O. Covey, Sr. Of petitioner's authorized 1,000 shares of no par value stock, only 720 were issued. Of the 720 issued shares, 240 were issued to Julia E. Covey, 240 to her son, William O. Covey, Jr., 220 to her daughter, Lucile C. Hitchens, and 20 to her son-in-law, Norris H. Hitchens. From 1935 until January 2, 1958, there was no change in petitioner's stockholders or the number of shares held by each. Julia E. Covey exchanged her 240 shares of stock for an instrument in the form of a demand note dated January 2, 1958. At the time of this exchange on January 2, 1958, Julia E. Covey was 76 years old. The minutes of a meeting of petitioner's board of directors, held January 2, 1958, read as follows: A meeting of the Board of Directors of W. O. Covey, Inc. was held in the office of the corporation in Seaford, Delaware, at 7:30 P.M. on January 2, 1958. The following directors were present: William *27 O. Covey, Jr. Julia E. Covey Norris H. Hitchens Lucile C. Hitchens After some discussion it was decided by the directors and agreed upon by Julia Covey that she would sell back to the corporation the 240 shares of common stock that she owns of W. O. Covey, Inc. The price agreed upon was $70,000.00 and Mrs. Covey agreed to accept a note in that amount from the Corporation. It was also agreed that approximately $3,000.00 per year would be paid on the principal of the note plus interest on the unpaid balance at 5% rate. 1380 It was also agreed that Mrs. Covey's salary remain the same. There being no further business, the meeting adjourned. (Signed) Lucile C. Hitchens, Secretary On January 2, 1958, the only directors of petitioner were those listed in the minutes as being present at the meeting of the board of directors. Julia E. Covey's basis in her 240 shares of stock was $24,398.08 and the approximate fair market value of the stock on January 2, 1958, was $70,000. On January 2, 1958, the officers of petitioner were: President
W. O. Covey, Jr.
Vice President
Julia E. Covey
Secretary
Lucile C. Hitchens
Treasurer
Norris H. Hitchens
Julia *28 E. Covey had been vice president of petitioner since July 6, 1935, and continued as vice president until August 17, 1961. She was a member of the board of directors from January 20, 1936, until August 17, 1961. From January 2, 1958, until June 1, 1961, she received a yearly salary as vice president in the amount of $2,400. Dividends were paid by petitioner as follows: Fiscal year ending March 31
Amount
1951
$ 15,000
1952
20,000
1953
15,000
1954
15,000
1955
15,000
1956
15,000
1957
15,000
1968
18,000
No dividends were paid after the fiscal year 1957 until the fiscal year ending March 31, 1968. The instrument given by petitioner to Julia E. Covey was on a printed form which contained the provisions customary to a demand note which provides for confession of judgment. The instrument was executed as follows: Witness our hands and seals the day and year aforesaid. WITNESS: W. O. Covey, Inc. (Seal) W. O. Covey, Jr., Pres. (Seal) Norris Hitchens, Treas. (Seal) The note contained no restriction on transferability. Julia E. Covey from the time the note was issued in 1958 until her death in February 1967, made no demand upon petitioner to *29 pay any part of the principal of the note and received no such payment. Petitioner each year paid $3,500 to Julia E. Covey which it denominated as interest at the rate of 5 percent per annum on the $70,000 note. Norris H. Hitchens was executor of the estate of Julia E. Covey. No demand was made upon petitioner to pay any part of the principal of the $70,000 during the settling of the estate and no such payment was made. Julia E. Covey in her will left the residue of her estate which included the instrument in question to her granddaughter, Julia L. Hitchens, who has made no demands on petitioner to pay any part of the $70,000 principal. Julia L. Hitchens is the daughter of Norris H. Hitchens. On January 28, 1968, a new instrument was issued to Julia L. Hitchens. This instrument was also in the form of a demand note, given under seal, bearing 5 percent interest per annum, and providing for confession of judgment. There was no restriction on transferability of the new instrument. In September 1968, petitioner made a payment of $5,000 as its first payment on the principal of $70,000 to show "good faith." There was a closely knit family relationship between the members of the Covey *30 family. At the time of the transaction concerning the exchange of stock by Julia E. Covey for the instrument dated January 2, 1958, and during the years which followed, there was never any dissension between Julia E. Covey and her children nor between her and her son-in-law, Norris H. Hitchens. W. O. Covey, Jr., died on July 9, 1963. Lucile C. Hitchens died prior to December 1966. Norris H. Hitchens has a life estate and Julia L. Hitchens has a remainder interest in the 220 shares held by Lucile C. Hitchens prior to her death. On August 17, 1967, Julia L. Hitchens was elected as a director of petitioner and 1381 has continued from that time to serve as a member of the board. She was elected secretary of petitioner on October 25, 1966, and has continued to serve in that capacity. The following tables show the balance sheets and profit and loss statements of petitioner for the years 1959 through 1968: *10 Profit and Loss Statement, 1964-1968
1964
1965
1966
1967
1968
Sales (net)
$2,790,155
$3,269,923
$3,481,157
$3,913,681
$3,922,182
Cost of goods sold
Inventory--Beginning
235,094
290,941
306,327
336,422
406,451
Purchases
2,455,383
2,852,162
3,042,131
3,460,008
3,357,079
Freight 5,576
10,373
5,074
4,044
8,571
Total
2,696,053
3,153,476
3,353,532
3,800,474
3,772,101
Inventory--Ending 290,941
306,327
336,422
406,451
401,132
Cost of goods sold 2,405,112
2,847,149
3,017,110
3,394,023
3,370,969
Gross profit on sales
385,043
422,774
464,047
519,658
551,213
Other income:
Purchase discount
15,883
18,441
24,858
28,383
32,565
Dividends
438
497
365
279
216
Rent
900
900
900
900
825
Interest 290
0
0
0
0
Total other income 17,511
19,838
26,123
29,562
33,606
Total income
402,554
442,612
490,170
549,220
584,819
Expenses:
Operating expense
371,469
397,503
436,801
490,117
530,472
Officers' life insurance
2,403
2,684
3,109
3,233
3,359
Contributions
1,008
1,500
1,500
1,550
73
Interest
3,500
3,500
3,645
6,071
9,562
Employees' profit sharing plan
12,087
18,188
19,967
23,627
22,939
Less endorsed note 0
0
0
0
0
Total expenses 390,467
423,375
465,072
524,598
566,045
Net income before
Federal taxes
12,087
19,237
25,098
24,622
18,414
Federal income taxes 4,020
4,663
6,410
6,611
3,775
Net income
8,067
14,57m
18,688
18,011
14,639
*31 1382 *10 Balance Sheet, 1959-1963
1959
1960
1961
1962
1963
Assets
Current assets
Cash
$ 26,190
$ 20,076
$ 52,451
$ 18,240
$ 46,519
Accounts receivable
81,112
79,561
113,656
117,678
126,159
Inventory
141,510
160,578
197,358
164,539
235,094
Investments (at cost)
10,650
10,650
10,650
10,650
10,650
U.S. Government bonds
49,000
49,000
49,000
49,000
49,000
Cash surrender value of life insurance
8,475
9,738
10,736
11,745
12,774
Advance on commissions 0
0
0
0
0
Total current assets
$316,937
$329,603
$433,851
$371,852
$480,196
Fixed assets
Land
1,500
1,500
1,500
1,500
1,500
Bldg., fixtures and equip. 7,811
6,685
6,380
5,036
3,815
Total fixed assets 9,311
8,185
7,880
6,536
5,315
Total assets $326,248
$337,788
$441,731
$378,388
$485,511
Liabilities
Current liabilities
Accounts payable
63,935
60,474
141,826
$ 49,768
$116,944
Payroll taxes
2,810
4,018
3,934
3,692
4,356
Notes payable--bank
3,000
9,000
4,000
0
0
Accrued commissions and salaries
6,198
23,063
33,740
33,692
41,848
Profit sharing trust
16,944
13,832
13,497
19,745
20,294
Federal income tax
7,000
4,601
4,444
6,055
8,071
Loanspayable--officers and others 20,015
5,352
15,212
30,128
40,092
Total current liabilities
$119,902
$120,340
$216,653
$143,080
$231,605
Long-term liabilities
Notes payable
Redemption of stock
70,000
70,000
70,000
70,000
70,000
Officers
0
0
0
0
0
Employees' profit sharing 0
0
0
0
0
Total long-term liabilities 70,000
70,000
70,000
70,000
70,000
Total liabilities
189,902
190,340
286,653
213,080
301,605
Shareholders' Equity
Capital assigned to common stock--1,000 authorized, no par value--720 outstand- ing, 240 treasury stock
73,179
73,179
73,179
73,179
73,179
Retained earnings 133,167
144,269
151,899
162,129
180,727
Total
206,346
217,448
225,078
235,308
253,906
Less treasury stock 70,000
70,000
70,000
70,000
70,000
Total shareholders' equity-- capital 136,346
147,448
155,078
165,308
183,906
Total liability and capital $326,248
$337,788
$441,731
$378,388
$485,511
*32 *10 Balance Sheet, 1964-1968
1964
1965
1966
1967
1968
Assets
Current assets
Cash
$ 57,688
$ 60,012
$ 63,528
$ 47,034
$ 51,682
Accounts receivable
143,736
165,423
204,735
214,620
193,951
Inventory
290,941
306,327
336,422
406,451
401,132
Investments (at cost)
10,650
10,650
5,650
5,650
5,650
U.S. Government bonds
0
0
0
0
0
Cash surrender value of life insurance
8,578
9,230
13,242
17,305
20,926
Advance on commissions 0
0
1,500
0
0
Total current assets
$511,593
$551,642
$625,077
$691,060
$673,341
Fixed assets
Land
1,500
1,500
1,500
1,500
1,500
Bldg., Fixtures and equip. 2,814
3,954
11,065
11,962
21,542
Total fixed assets 4,314
5,454
12,565
13,462
23,042
Total assets $515,907
$557,096
$637,642
$704,522
$696,383
Liabilities
Current liabilities
Accounts payable
147,187
150,916
158,564
188,682
157,042
Payroll taxes
3,470
7,252
5,060
4,423
4,605
Notes payable--bank
0
0
0
0
26,000
Accrued commissions and salaries
25,361
27,691
40,784
37,520
20,017
Profit sharing trust
12,087
18,188
19,967
23,627
22,939
Federal income tax
4,020
4,663
6,410
6,611
3,775
Loans payable--officers and others 46,407
56,437
92,209
56,937
50,023
Total current liabilities
238,532
265,147
322,994
317,800
284,401
Long-term liabilities
Notes payable
Redemption of stock
70,000
70,000
70,000
70,000
70,000
Officers
0
0
0
50,000
50,000
Employees' profit sharing 0
0
0
0
25,000
Total long-term liabilities 70,000
70,000
70,000
120,000
145,000
Total liabilities
308,532
335,147
392,994
437,800
429,401
Shareholders' Equity
Capital assigned to common stock--1,000 authorized, no par value--720 outstand- ing, 240 treasury stock
73,179
73,179
73,179
73,179
73,179
Retained earnings 204,196
218,770
241,469
263,543
263,803
Total
277,375
291,949
314,648
336,722
336,982
Less treasury stock 70,000
70,000
70,000
70,000
70,000
Total shareholders' equity--Capital 207,375
221,949
244,648
266,722
266,982
Total liability and capital $515,907
$557,096
$637,642
$704,522
$696,383
*33 1384 Proft and Loss Statement, 1959-1963
1959
1960
1961
1962
1963
Sales (net)
$2,022,559
$2,076,500
$2,297,429
$2,561,922
$2,602,270
Cost of goods sold
Inventory--Beginning
119,716
141,509
160,578
197,358
164,539
Purchases
1,735,759
1,795,424
2,009,054
2,156,190
2,257,176
Freight 8,805
10,008
8,827
4,433
6,871
Total
1,864,280
1,946,941
2,178,459
2,357,981
2,428,586
Inventory--Ending 141,510
160,578
197,358
164,539
235,094
Cost of goods sold 1,722,770
1,786,363
1,981,101
2,193,442
2,193,492
Gross profit on sales
299,789
290,137
316,328
368,480
408,778
Other income:
Purchase discounts
9,835
16,261
11,766
13,366
14,940
Dividends
315
415
370
415
430
Rent
720
720
720
765
900
Interest 1,630
2,320
940
1,495
1,380
Total other income 12,500
19,716
13,796
16,041
17,650
Total income
312,289
309,853
330,124
384,521
426,428
Expenses:
Operating expense
266,700
274,464
300,166
340,778
374,168
Officers' life insurance
1,078
1,075
1,225
803
1,141
Contributions
1,200
1,000
1,200
1,070
1,075
Interest
3,800
4,126
539
2,379
3,574
Employees' profit sharing plan
16,944
13,831
13,497
19,745
20,829
Less endorsed note 0
917
0
0
0
Total expenses 289,722
295,413
316,627
364,775
400,787
Net income before
Federal taxes
22,567
14,440
13,497
19,746
25,641
Federal income taxes 7,000
4,601
4,443
6,056
8,071
Net income
15,567
9,839
9,054
13,690
17,570
*34 1385 Petitioner in each of its fiscal years ended March 31, 1963, and March 31, 1964, claimed a deduction for the amount of $3,500 paid to Julia E. Covey with respect to the $70,000 instrument as interest paid. Respondent in his notice of deficiency disallowed these claimed deductions. Ultimate Finding of Fact Payment of $3,500 made by petitioner in each of its fiscal years ended March 31, 1963, and March 31, 1964, with respect to the instrument issued to Julia E. Covey on January 2, 1958, is not interest paid on an indebtedness so as to be deductible under section 163, I.R.C. 1954. [1]
Opinion Petitioner contends that the yearly payments of $3,500 to Julia E. Covey in connection with the instrument originally issued to her in 1958 in exchange for her certificate of 240 shares of petitioner's stock are deductible under section 163(a) which provides for the allowance of a deduction for all "interest paid or accrued within the taxable year on indebtedness." We must therefore decide whether *35 the transaction which occurred on January 2, 1958, did in fact create a bona fide debt of petitioner to Julia E. Covey within the meaning of section 163. The substance of the economic relationship, rather than the form in which a transaction is cast, determines the incidents of Federal income taxation. Gregory v. Helvering, 293 U.S. 465 (1935), and Edwin C. Hollenbeck, 50 T.C. 740 (1968), on appeal (C.A. 9, Nov. 18, 1968). The instrument issued to Julia E. Covey was in the form of a demand note. There is nothing in the record to indicate that Julia E. Covey could not have enforced payment of the note in a court of law or could not have assigned the note for value. We will therefore assume that under State law and in form the instrument created a valid indebtedness of petitioner to Julia E. Covey. This assumption does not, however, answer the question of whether this instrument should be treated as creating a bona fide debt for purposes of taxation. The form of the instrument or its validity under State law does not control its treatment for Federal tax purposes. *36 United States v. Snyder Brothers Company, 367 F. 2d 980 (C.A. 5, 1966). All the surrounding circumstances at the time of the issuance of an instrument and the subsequent treatment of the transaction by the parties must be examined to determine whether for tax purposes there was an "indebtedness." Ambassador Apartments, Inc., 50 T.C. 236 (1968), affirmed per curiam 406 F. 2d 288 (C.A. 2, 1969). Cases dealing with whether an instrument in form evidencing an indebtedness does in substance create an indebtedness by the maker arise from many diverse factual situations. In many such cases funds advanced by shareholders to corporations in return for an instrument in the form of a note or bond are determined by the Commissioner to be in substance capital contributions to the corporation. In determining whether there is in fact an indebtedness of the corporation to the shareholder, all of the surrounding facts are considered. One of the primary facts to be determined is whether there is an unconditional intent to repay the amount of the claimed indebtedness *37 in all events. Without such an intent to repay, there can be no indebtedness. In Edwin C. Hollenbeck, supra, at 747, we stated: The debt-equity inquiry is essentially the same in all areas. The precise determination to be made - is there more than one class of stock, are notes bona fide indebtedness, etc., varies from case to case, but the basic standards remain the same in all cases where the respondent seeks to reclassify debt or equity. The test is whether the form in which the taxpayer has cast the transaction has substantial economic reality. * * * The instrument which was issued on January 2, 1958, to Julia E. Covey was in exchange for all her common stock in petitioner. Respondent makes an extended argument that the transaction did not amount to a redemption of stock within the definition of sections 302(a) and 317(b). [2] 1386 Petitioner does not contend that the transaction was a distribution in redemption of the stock of Julia E. Covey within the meaning of these sections, apparently for the reason which respondent points out, that Julia E. Covey remained an officer and director of petitioner for several years after the transaction of January 2, 1958. *38 *39 Since Julia E. Covery remained an officer and director of petitioner for several years after January 2, 1958, it is obvious that under the attribution provisions, she is considered to own the stock owned by her son and her daughter. After the exchange of her common stock for the instrument dated January 2, 1958, she would be considered as owning, under the attribution provision, over 95 percent of petitioner's common stock. Petitioner takes the simple position that the transaction of January 2, 1958, constituted a purchase by the corporation of the stock of Julia E. Covey just as much as if cash had been paid for the stock. Upon consideration of all the facts here present, we agree with respondent that the instrument issued to Julia E. Covey on January 2, 1958, though in the form of a demand note, did not actually create a debtor-creditor relationship between Julia E. Covey and petitioner from the standpoint of economic reality but more nearly resembled an exchange of common stock for a form of preferred stock. The financial situation of petitioner was such that regular yearly payments could have been made on the principal, but the note could not have been paid on demand without *40 greatly curtailing petitioner's ability to carry on its operations. In fact, in its brief, petitioner states: In 1958 when the $70,000.00 note was given to Mrs. Covey the petitioner enjoyed a line of credit at the bank of only fifteen or twenty thousand dollars. According to the testimony of Mr. Hitchens (T. p. 23) the company has never been in a position, since 1958, to pay off the $70,000.00 obligation. * * * In order to clearly point out the desperate working capital position of the petitioner a document entitled "Working Capital Position of W. O. Covey, Inc. as of March 31, 1959 through 1968" was prepared and put in evidence as Petitioner's Exhibit No. 9. * * * Petitioner then pointed out that Julia E. Covey did not need the cash and had sufficient funds from the $3,500 she was collecting annually from petitioner under the designation of "interest" plus other assets to live comfortably. The substance of petitioner's argument is that Julia E. Covey did not, at the time the note was issued or at any time thereafter, intend that any portion of the $70,000 face amount of the so-called demand note be paid to her unless the financial position of petitioner was such that it could *41 be paid with no inconvenience to petitioner. Since petitioner could not make such payment at any time after January 2, 1958, without substantially curtailing its operation, Julia E. Covey made no request for any payment. The inference from the record is unmistakable that it was the intent of Julia E. Covey, as well as the other officers of petitioner, that the investment which Julia E. Covey had in the corporation would not actually be taken out of the corporation but that Julia E. Covey would receive yearly payments which would be denominated "interest" whether or not any corporate dividends were declared to the other stockholders. The minutes of January 2, 1958, referred to payments of $3,000 annually on "principal" of the "note." However, the fact that no such payments were made or sought leaves the clear inference that it was never intended that such payments be made if petitioner had a more pressing need for use of its funds. Petitioner contends that there were several business reasons why petitioner desired to purchase the stock of Julia E. Covey. It contends that William O. Covey, Jr., and Norris H. Hitchens were carrying the major work of the corporation and that their percentage *42 interest was increased when the corporation purchased the stock of Julia E. Covey; that Julia E. Covey was 1387 growing older and might have given her stock to a person who would not have petitioner's interest at heart; that the other stockholders of petitioner desired to ease Julia E. Covey out of petitioner without hurting her feelings; and that her stock could be held as treasury stock in the event it was desired to issue the stock to key employees. None of these so-called business reasons, when analyzed, is a business reason from the standpoint of the corporate petitioner. The logical way for William O. Covey, Jr., and Norris H. Hitchens to have increased their stock interest would have been for them to have personally purchased the stock of Julia E. Covey. Certainly, more havoc might have been wrought had Julia E. Covey given the so-called note to an outsider who would have enforced its collection than had she given her common stock to an outsider who would not have had a controlling interest. The fact is that Julia E. Covey did remain an officer and director after the transaction of January 2, 1958. Also the facts show that there was unissued stock of petitioner which could *43 have been used to distribute to key employees and none of that stock or the stock previously held by Julia E. Covey has been so used. The fact that no payment was made on the "principal" of the "note" to Julia E. Covey or to her estate supports the inference from other facts in the record that the intent at the time of the transaction was that no payment was to be made on the note unless the circumstances of the business were such that petitioner had funds for which it had no need in its business. The clear inference is that there was not an unconditional intention to pay the so-called indebtedness and that in economic reality Julia E. Covey retained an equity interest in petitioner after the exchange of January 2, 1958. The fact that shortly before the trial of this case a payment on the so-called note was made to show "good faith" is not persuasive that during the years here in issue the instrument dated January 2, 1958, evidenced a bona fide debt of petitioner. The payment of $3,500 in each of the years here in issue by petitioner to Julia E. Covey was in the nature of a dividend on preferred stock and not interest on a loan. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK. (a) General Rule. - If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock. (b) Redemptions Treated as Exchanges. - (1) Redemptions not equivalent to dividends. - Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend. * * * (3) Termination of shareholder's interest. - Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder. * * * (c) Constructive Ownership of Stock. - (1) In general. - Except as provided in paragraph (2) of this subsection, section 318(a) shall apply in determining the ownership of stock for purposes of this section. (2) For determining termination of interest. - (A) In the case of a distribution described in subsection (b)(3), section 318(a)(1) shall not apply if - (i) immediately after the distribution the distributee has no interest in the corporation (including an interest as officer, director, or employee), other than an interest as a creditor, * * * Sec. 317(b)↩ Redemption of Stock. - For purposes of this part, stock shall be treated as redeemed by a corporation if the corporation acquires its stock from a shareholder in exchange for property, whether or not the stock so acquired is cancelled, retired, or held as treasury stock.