Michael **BERKOWITZ** and Harris Kolbert, as last directors and liquidating trustees of **K & B Trail Properties, Inc.,** Plaintiff-Appellants,

v.

**UNITED STATES** of America, Defendant-Appellee.

No. 26977

Summary Calendar.

United States Court of Appeals Fifth Circuit.

May 13, 1969.

Philip T. Weinstein, Cunningham & Weinstein, Miami, Fla., for appellants.

William A. Meadows, Jr., U. S. Atty., Miami, Fla., Mitchell Rogovin, Johnnie M. Walters, Asst. Attys. Gen., Lee A. Jackson, Louis M. Kauder, Stanley L. Ruby, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

The appellants brought this action, pursuant to 28 U.S.C.A. § 1346(a) (1),[1] for a refund of income taxes paid by the taxpayer, K & B Trail Properties, Inc., claiming that the Commissioner erroneously determined that certain advances made by the appellant to the taxpayer were contributions to capital rather than loans.[2] A trial by jury resulted in a verdict for appellants. The District Court granted the Government's motion for judgment notwithstanding the verdict. We affirm.[3]

The facts are undisputed. In July, 1956, the appellants formed the taxpayer, K & B Trail Properties, Inc., a Florida corporation. Each of the appellants paid $2500 cash for one-half of the taxpayer's authorized stock. They advanced the taxpayer $83,000 to begin business because the taxpayer was unable to borrow funds elsewhere. The taxpayer purchased a 99-year lease on business property utilizing these funds and assumed a mortgage of $57,829.20 as part of the purchase price of the lease. Each appellant took notes from the taxpayer totalling $41,500, payable in four installments of $2,500 commencing July 10, 1957, with the unpaid balance due July 10, 1961, with interest at the rate of 6 percent.

In October, 1956, to finance the construction of an additional building on the property, the taxpayer borrowed $40,000 at 6 percent interest from a Savings and Loan Association, secured by a mortgage. In December, 1958, the taxpayer purchased the ground under the leasehold for $50,000. This transaction was partially financed by advances from the appellants in the amount of $5,000 each, evidenced by 15 percent notes due in December, 1959. The taxpayer borrowed $30,000 from a New York mortgage company, evidenced by an 8 percent note secured by a second mortgage on the premises.

In 1960 the appellants each advanced the taxpayer $4,000. In 1963 they each advanced the taxpayer $3,600. There were no maturity dates for, or written evidence of these advances.

Thus through 1963 the appellants had made unsecured advances to the taxpayer of $108,200, and two lending institutions had loaned the taxpayer $70,000 secured by mortgages. Obviously, the taxpayer was thin to the point of being transparent. Although the taxpayer was timely in its payments to the banking institutions, from 1956 through 1963 the taxpayer had paid only $1,980 toward the principal of the advances made by the appellants. There was no plan to reduce the principal further.

In 1963 the taxpayer realized $60,000 from the sale of property, but instead of paying off the long overdue "loans" to the appellants, the taxpayer placed the money in a bank account where it drew a

---

1. The appellants, Berkowitz and Kolbert, brought this action as the last directors and liquidating trustees of the taxpayer.

2. Having determined that the advances were contributions to capital instead of loans, the Commissioner disallowed the taxpayer's deductions of payments made to the appellants on these advances as interest on indebtedness pursuant to section 163(a) of the Internal Revenue Code.

3. Under Rule 18, the Court has placed this case on the Summary Calendar for disposition without oral argument. See Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804.

maximum of four and one-half percent, while, at the same time, the taxpayer was paying ten to fifteen percent on the principal of the advances made by the appellants. While the appellants, as directors of the taxpayer, made no effort to reduce the principal amount of their "loans" to the taxpayer, they did meet at the end of each year and decide what interest rate to pay. The taxpayer paid interest to the appellant as follows: 1957—4%, 1958—8%, 1959—15%, 1960—14%, 1961—10%, 1962—10%, and 1963—13%.

On its income tax returns for the years in issue the taxpayer deducted the "interest" it had paid to the appellants during each fiscal year pursuant to section 163(a) of the Code.[4] The Commissioner disallowed these deductions.[5]

The appellants urge that the advances made by them represent indebtedness, and that the taxpayer validly deducted the interest paid on this indebtedness pursuant to § 163(a). The Commissioner asserts that the advances made by appellants were contributions to capital and that the payments made to the appellants by the taxpayer were returns on capital investment.

■ Although there is a plethora of precedent on the question of whether advances by stockholders to closely held corporations are to be considered as debts or contributions to capital, each case must be decided on its unique fact situation, and no single test is controlling or decisive in making this determination. Harlan et al. v. United States, 5 Cir. 1969, 409 F.2d 904; Tomlinson v. 1661 Corporation, 5 Cir. 1967, 377 F.2d 291; United States v. Henderson, 5 Cir. 1967, 375 F.2d 36.

■■ The appellants had the burden to prove that the advances represented indebtedness rather than equity, and the fact that they intended to make loans and not capital contributions to the taxpayer is not determinative of the equity-capital tax issue. Nor is it decisive that the notes were executed in accordance with state law and described by the appellants and the taxpayer as "loans". Fin Hay Realty Co. v. United States, 3 Cir. 1968, 398 F.2d 694; Tomlinson v. 1661 Corporation, *supra*. These are just several of the numerous factors to be considered in determining whether the funds advanced to the taxpayer represented capital contributions rather than loans. We have expatiated on the criteria with some specificity as follows:

> There are at least eleven separate determining factors generally used by the courts in determining whether amounts advanced to a corporation constitute equity capital or indebtedness. They are (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation in management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) 'thin' or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of 'dividend' money; (11) the ability of the corporation to obtain loans from outside lending institutions.

Montclair, Inc. v. Commissioner of Internal Revenue, 5 Cir. 1963, 318 F.2d 38,

4. Section 163(a) of the Internal Revenue Code of 1954 provides that there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

5. The Commissioner's disallowance of these deductions increased the taxpayer's income taxes by the following amounts:

Fiscal Year Ending 6/30/61—$3,052.68
Fiscal Year Ending 6/30/62—$3,518.48
Fiscal Year Ending 6/30/63—$4,927.45
Fiscal Year Ending 6/30/64—$3,407.43

40, quoting O. H. Kruse Grain & Milling Co. v. Commissioner of Internal Revenue, 9 Cir. 1960, 279 F.2d 123, 125. To this list can be added the extent to which the initial advances were used to acquire capital assets. Janeway v. Commissioner of Internal Revenue, 2 Cir. 1945, 147 F.2d 602; and the failure to pay on or postponement of the due date, United States v. Henderson, 5 Cir. 1967, 375 F.2d 36; Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., 7 Cir., 1942, 132 F.2d 182.

Applying these criteria to the case *sub judice*, there can be no doubt that the advances were nothing more than capital transfers as opposed to bona fide indebtedness. Obviously the taxpayer was inadequately capitalized. Considering only the advances made by the appellants, which the taxpayer designated as indebtedness, the ratio of debt to equity would have been about 21 to 1. Adding the institutional indebtedness to the advances made by the appellants would have made the ratio more lopsided.

Almost immediately after incorporation the appellants advanced money to the taxpayer for the purchase of capital assets, without which the taxpayer would have been a corporate shell because financing could not be obtained for it elsewhere. Advances of about $15,000 were not even represented by notes. Those that were evidenced by notes had specified interest rates and definite due dates, but the due dates were uniformly disregarded. We held this to be an important consideration in Aronov Construction Co. v. United States, 5 Cir. 1964, 338 F.2d 337. Repayment of the principal of the advances was not seriously considered. Furthermore, the appellants, as taxpayer's directors, waited until the end of the fiscal year to "declare" the "interest rate" in exactly the same way that directors would declare a dividend. Substantial proceeds from the sale of an asset were not used to pay off the advances, but were permitted to remain on deposit at four and one-half percent while the taxpayer at the same time was paying the appellants 10 to 15 percent interest.

Other than the income produced from taxpayer's property there was no fund or other source from which the advances by the appellants might be repaid. There was no showing that by the use of this income the principal could be paid off in a timely manner, or indeed in the foreseeable future. Finally, the appellants, who had complete control and management of the taxpayer, advanced the taxpayer money in direct proportion to their ownership of its capital stock.

Notwithstanding the undisputed operative facts, the appellants urge that the ultimate question of whether advances represent indebtedness or contributions to capital for federal tax purposes is a jury question. We disagree.

The appellants' reliance on Diamond Bros. Co. v. C. I. R., 3 Cir. 1963, 322 F.2d 725, is misplaced. There, unlike here, there was a dispute concerning an underlying aspect of a transaction which raised an issue of fact that had to be resolved by the trier of fact. Nor are we persuaded by appellants' argument that the case *sub judice* is one in which there is a *controlling significance* to the intent of the parties, thus the debt-equity question is one of fact. See e. g., Los Angeles Shipbuilding Drydock Corp. v. United States, 9 Cir. 1961, 289 F.2d 222; Matthiessen v. C. I. R., 2 Cir. 1952, 194 F.2d 659. In any event, we adhere to what we said in United States v. Snyder Brothers Company, 5 Cir. 1966, 367 F.2d 980:

[T]he problem is not one of ascertaining "intent" since the parties have objectively manifested their intent. It is a problem of whether the intent and acts of these parties should be disregarded in characterizing the transaction for federal tax purposes.

It is not the jury's function to determine whether the undisputed operative facts add up to debt or equity. This is a question of law. It was correctly decided by the District Court in favor of the government.

Affirmed.