John Lizak, Inc. v. Commissioner. John Lizak and Gloria Lizak v. Commissioner.
John Lizak, Inc. v. Commissioner
Docket Nos. 4504-66, 4505-66.
United States Tax Court
T.C. Memo 1969-163; 1969 Tax Ct. Memo LEXIS 133; 28 T.C.M. (CCH) 804; T.C.M. (RIA) 69163; August 12, 1969. Filed Morris M. Goldings, for the petitioners. Robert B. Dugan, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioners' Federal income tax in the years and in the amounts as follows: John Lizak, Inc.F/Y/E
Docket No. 4504-66Deficiency
10/31/61
$2,806.67
10/31/62
389.68
10/31/63
1,126.83
10/3 1/64
677.60 805 John and Gloria Lizak, Docket No. 4505-66 Year
Deficiency
1958
$1,133.57
1959
971.34
1960
103.42
1961
4,415.61
1962
59.75
1963
746.49
1964
943.76
Three issues are presented: (1) Whether amounts distributed to petitioners John and Gloria Lizak in the taxable years 1958 through 1964 by John Lizak, Inc., constituted taxable dividends; (2) whether certain expenditures made by John Lizak, *134 Inc., in the taxable years 1958 through 1964 were made on behalf of petitioners John and Gloria Lizak, thereby constituting dividends to these petitioners; and (3) whether certain expenditures claimed as deductions by petitioner John Lizak, Inc. for the taxable years ending October 31, 1961 through October 31, 1964 were made for the personal benefit of John and Gloria Lizak, thereby being nondeductible as ordinary and necessary business expenses under section 162, I.R.C. 1954. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. Petitioner John Lizak, Inc. was incorporated in August 1956, and began its business operations as of November 1, 1956. It had a principal place of business at 190 Thorndike Street, Plamer, Massachusetts, at the time it filed its petition herein. It kept its books and records on the accrual basis and filed its income tax returns for the fiscal years ended October 31, 1957 through October 31, 1964 with the district director of internal revenue, Boston, Massachusetts. Petitioners John and Gloria Lizak resided at Palmer, Massachusetts, at the time their petition was filed herein. They filed *135 joint income tax returns for the taxable years 1958 through 1964 with the district director of internal revenue, Boston, Massachusetts. They reported their income on the calendar year basis. From 1945 until November 1956 petitioner John Lizak ("Lizak") operated a road construction and excavating business as a sole proprietorship. He organized John Lizak, Inc., to take over that business; he was motivated at least in part to insulate himself from possible tort claims that might arise from the conduct of the business. The assets of the sole proprietorship consisted solely of a building, furniture and fixtures, motor vehicles, and machinery and equipment, having an aggregate depreciated value of $120,532.08, subject to a bank loan in the amount of $47,042.66. Prior to November 1, 1956, Lizak paid in $5,000 cash and transferred the assets of the proprietorship in exchange for all the outstanding stock (100 shares) of the corporation. At the same time the corporation assumed the outstanding liabilities of the proprietorship - i.e., the $47,042.66 bank loan -, and made a book entry reflecting an indebtedness to Lizak in the amount of $73,489.42, i.e., the difference between the depreciated *136 value of the total assets of the business ($120,532.08) and the outstanding bank loan ($47,042.66). The opening balance sheet of John Lizak, Inc., reflecting these transactions, was as follows: Assets:
Cash
$ 5,000.00
Building Furniture and Fix- tures Motor Vehicles Machinery and Equip- ment
$183,646.63
Less: Accum.
Deprec.
63,114.55
120,532.08
$125,532.08
Liabilities:
Bank Loan
47,042.66
Loan by Officer (John Lizak)
73,489.42 120,532.08
Capital Stock
5,000.00
$125,532.08 No note was given with respect to the purported corporate indebtedness to Lizak, no provision for interest was made, and there was no fixed time for the repayment of principal. During the years in issue Lizak made various cash withdrawals from the corporation. These withdrawals were treated by him as repayments of his alleged loan to the corporation, and, accordingly, he did not include in his income the amounts withdrawn. The parties have stipulated that the following schedule is "an analysis of the loan account" payable to Lizak: 806 *10 JOHN LIZAK, INC. - ANALYSIS LOAN PAYABLE - OFFICER'S ACCOUNT
* 10
Loan Payable Bal.
(Increase * )
(Increase * )
Cal. Yr.
As Of
Decrease
Decrease
(Increase) Date
Cal. Yr.
F/Y
1/1-10/31
11/1-12/31
Decrease
11- 1-56
$73,489.42
10-31-57
73,318.05
12-31-57
$80,973.91
10-31-58
68,917.36
$12,056.55
12-31-58
72,078.62
($3,161.26)
$ 8,895.29
10-31-59
59,618.80
12,459.82
12-31-59
59,239.97
378.83
12,838.65
10-31 -60
41,369.43
17,870.54
12-31-60
40,758.09
611.34
18,481.88
10-31-61
23,243.82
17,514.27
12-31-61
22,133 .22
1,110.60
18,624.87
10-31-62
35,999.32
13,866.10
12-31-62
34,558.14
1,441.18
(12,424.92)
10-31-63 32,678.14
1,880.00
12-31-63
32,478.84
199.30
2,079.30
10-31-64
28,410.80
4,068.04
12-31-64
28,006.85
403.95
4,471.99
*137 No dividend was paid by John Lizak, Inc. during the taxable years ended October 31, 1957 through October 31, 1964. During the early years of the business, prior to its incorporation, Lizak purchased his equipment "outright". As the company grew, additional equipment was required and, Lizak's personal credit having been established at a bank in Palmer, new equipment was financed through bank loans as needed. Prior to incorporating his proprietorship, Lizak conducted all of his business operations from his home, which he occupied with his wife and three children. For this purpose he used certain space in his basement. However, at about the time that John Lizak, Inc. was incorporated, or at some time thereafter (but prior to the tax years) the office of the business was moved from Lizak's home to a building owned by the corporation in downtown Palmer, Massachusetts, approximately 4 1/2 miles from his home. The one full-time office employee of the business thereupon reported for work regularly to the downtown office. After this move, however, Lizak occasionally used his home for business purposes, *138 such as when customers wished to speak with him after his office business hours. During the taxable years in question John Lizak, Inc. held title to various automobiles which were used by Lizak both personally and in his business. During 1962 the title to one such car was transferred to Lizak. Also, during that year he paid John Lizak, Inc. $500 for the use of one of the corporation's automobiles. Lizak was unable to specify the portion of time which these automobiles were devoted to his personal use. During the years in issue John Lizak, Inc. purchased two cameras and a tape recorder for which deductions were claimed on the corporation's returns and disallowed by the Commissioner. No issue is raised as to one of those cameras; the other, involving a claimed expenditure of $99.95 during the year ended October 31, 1962 is in controversy. Lizak had some 3 or 4 cameras in all, and there is no satisfactory evidence that the particular camera in issue purchased during the tax years was ever used for corporate purposes; nor is the evidence convincing that the tape recorder was used to any substantial degree for corporate rather than personal purposes. During these years, John Lizak, *139 Inc. also paid a portion, if not all, of the personal fuel, light and telephone bills of the individual petitioners. No satisfactory evidence was presented concerning the extent to which such payments were made with respect to John Lizak, Inc.'s use of these facilities. The Commissioner determined deficiencies in the income tax of the corporate petitioner John Lizak, Inc. for its taxable years 1961 through 1964. These deficiencies were explained in the Commissioner's letter of deficiency as follows: 807 It has been determined that the deduction of $142.75 for a camera claimed as a selling expense in the taxable year ending October 31, 1961; the deduction of $99.95 for a camera claimed as a miscellaneous expense and $32.00 of the amount claimed as a legal expense in the taxable year ending October 31, 1962; and the deduction of $1,045.33 claimed as real estate taxes in the taxable year ending October 31, 1963, are disallowed because it has not been established that they represent ordinary and necessary business expenses. The deduction for the cost of a typewriter claimed as a selling expense in the year ending October 31, 1961, less allowable depreciation therein, is disallowed *140 because such cost represents a capital expenditure. The adjustment is computed as follows: Cost of Typewriter
$225.00
Less Depreciation Allowable Therein
22.50
Net Adjustment to Income
$202.50 It has been determined that of the various expenses of a motor vehicle, and other expenses of the personal residence of John Lizak paid by the corporation and claimed as deductions, the following should be disallowed because this portion does not represent an ordinary and necessary business expense or was not expended for the purpose designated: 10/31/61
$1,000.00
10/31/62
$1,000.00
Less reimburse- ment by John Lizak
750.00 250.00
10/31/63
$1,000.00
Less reimburse- ment by John Lizak
532.00 468.00
10/31/64
1,000.00
The only deficiencies above noted contested by John Lizak, Inc. are those relating to the purchase of a camera for $99.95, the use of a motor vehicle by John Lizak, and the payment of expenses relating to John Lizak's personal residence. The Commissioner determined deficiencies in the income tax of petitioners John and Gloria Lizak, claiming that the amounts distributed to them with respect *141 to Lizak's purported loan to John Lizak, Inc. and that the amounts paid by the corporation on behalf of the individual petitioners were dividends to them. In this respect, the Commissioner's determination of deficiency stated as follows: It has been determined that the following amounts received from John Lizak, Inc., are taxable as dividend income. Since you failed to report such amounts on your income tax returns, taxable income is increased by these amounts: 1958
$ 5,621.82
1959
5,824.82
1960
1,096.22
1961
19,478.82
1962
381.95
1963
3,592.63
1964
5,471.99
Opinion RAUM, Judge: 1. Petitioner John Lizak conducted a construction business as a sole proprietorship. In 1956 he formed John Lizak, Inc., contributing $5,000 in cash and transferring to it the assets of the proprietorship having a depreciated book value of $120,532.08; in exchange, the corporation issued all of its authorized capital stock to him, assumed the liabilities of the proprietorship which consisted of a bank loan in the amount of $47,042.66, and established an account payable to Lizak in the amount of $73,489.42. Thereafter, during the years in issue, Lizak from time to time withdrew *142 funds from the corporation which he treated as partial repayments of the alleged $73,489.42 loan. The principal issue is whether that so-called account payable to Lizak in fact represented a loan so that the withdrawals or payments in question constituted nontaxable receipts in Lizak's hands, as contended by him, or whether that account payable in fact reflected a capital contribution to the corporation with the consequence that the subsequent withdrawals must be treated as taxable dividends to the extent of available corporate earnings and profits, as contended by the Commissioner. We hold that this "account payable" was not a bona fide loan. The issue turns upon whether there was in fact an intention to repay the alleged loan in any event or whether Lizak's transfer of the assets to the corporation was intended merely as a contribution to corporate capital to ride with the ups and downs of the enterprise and perhaps to furnish a convenient base for the distribution of corporate funds from time to time when the earnings and profits of the venture as well as its liquidity would permit. See 2554-58 Creston Corp., 40 T.C. 932, where we noted (p. 935): As was pointed out in Gilbert v. Commissioner, 248 F. 2d 399, 403 *143 (C.A. 2) * * *, the following language in Bazley v. Commissioner, 331 U.S. 737, 741, is applicable to the issue before us: "the form of 808 a transaction as reflected by correct corporate accounting opens questions as to the proper application of a taxing statute; it does not close them." It has often been recognized that "the essential difference between a creditor and a stockholder is that the latter intends to make an investment and take the risks of the venture, while the former seeks a definite obligation, payable in any event." Commissioner v. Meridian & Thirteenth R. Co., 132 F. 2d 182, 186 (C.A. 7). Similarly, it was said in Gilbert v. Commissioner, supra at 406: "The significant factor [is] * * * whether the funds were advanced with reasonable expectations of repayment regardless of the success of the venture or were placed at the risk of the business." * * * See also Leach Corporation, 30 T.C. 563, 578-579; Hoguet Real Estate Corporation, 30 T.C. 580, 598. Cf. Albert E. Crabtree, 22 T.C. 61, affirmed 221 F. 2d 807 (C.A. 2). There is no single formula, however, that supplies *144 the answer to the question whether under the facts of a particular case the transaction in issue qualifies as a true loan rather than an equity investment in the business. "The facts of each case must be studied, and the comparative emphasis or weight that is to be accorded to the various factors usually examined in this connection depends upon the facts as a whole." Leach Corporation, 30 T.C. 563, 576. And the burden of proof as to whether the advance in issue represents a true indebtedness is upon the taxpayer. 2554-58 Creston Corp., supra, 40 T.C. at 935. In our view petitioners have failed to carry that burden here. An important element frequently considered in cases of this character is whether the corporation was inadequately capitalized at the outset, i.e., whether it was "thinly capitalized." Montclair, Inc. v. Commissioner, 318 F. 2d 38, 40 (C.A. 5); Sam Schnitzer, 13 T.C. 43, 60, affirmed 183 F. 2d 70 (C.A. 9); Isidor Dobkin, 15 T.C. 31, 33-34, affirmed 192 F. 2d 392 (C.A. 2); Hoguet Real Estate Corporation, supra; 2554-58 Creston Corp., supra, 936; Ambassador Apartments, Inc., 50 T.C. 236, 241, *145 affirmed 406 F. 2d 288 (C.A. 2). Here, Lizak's formal capital stock investment was only $5,000 while the total of bank loans and the amount "payable" to him was $120,532.08, resulting in a debt to equity ratio of 24 to 1. Though this ratio is not as extreme as that found in other cases before this Court, cf. Isidor Dobkin, supra; Hoguet Real Estate Corporation, supra; 2554-58 Creston Corp., supra; it is nonetheless indicative of the high risk attaching to the amounts purportedly loaned to the corporation by Lizak. We find it difficult to believe that a business like the one here involved, which was subject to risks so great that Lizak thought it necessary, according to his testimony, to incorporate so as to avoid the danger of losing all his personal assets, could have justified so thin a capital structure. It is doubtful indeed that persons with only $5,000 in capital could have launched an enterprise of the character involved here. Whether "outside investors" would have made a loan to the corporation such as that purportedly made here by Lizak is a related and significant factor to be taken into account in determining the existence *146 of a bona fide indebtedness, see Arlington Park Jockey Club v. Sauber, 262 F. 2d 902, 905 (C.A. 7); Gilbert v. Commissioner, 248 F. 2d 399, 406, 407 (C.A. 2); 2554-58 Creston Corp., supra, 40 T.C. at 937, and we have very little doubt that no outside investor would have made any such loan. Lizak transferred assets consisting primarily of used machinery and equipment having a depreciated book value of $120,532.08 to the corporation, which was carried over in the books of John Lizak, Inc. These assets were subject to a prior encumbrance of $47,042.66. Petitioners presented no evidence which would indicate that these assets had a market value that would justify a loan of the proportions allegedly made by Lizak. To be sure, petitioners did offer testimony of Robert C. Brainard, who had been an assistant cashier at Lizak's bank at the time of John Lizak, Inc.'s incorporation and who had since become a vice president, to the effect that the bank would have made a loan to the corporation in an amount approaching that purportedly lent by Lizak. However, the short answer is that we found his testimony wholly unconvincing and did not believe it. Certainly, *147 we do not believe that any lender in an arm's-length transaction would have advanced an amount equivalent to that involved herein in the circumstances of this case, particularly on the terms granted by Lizak, i.e., without any security, or interest, or maturity. 809 Petitioners have argued that the absence of a tax-avoidance purpose in creating the corporation is of significance here. However, although we have not affirmatively found that there was a tax avoidance purpose in this case, we have not at the same time made any explicit finding that such purpose was wholly absent or that it did not play an important role in conjunction with the objective of attaining limited liability. The record left too much to conjecture in this respect. Moreover, though important, we think that the presence or absence of a tax avoidance purpose should not be determinative here. Our inquiry has been directed primarily at the substance of the transaction and our finding in this regard must control the tax consequences in issue regardless of the possible absence of a tax avoidance purpose. Cf. Berkowitz v. United States, 411 F. 2d 818 (C.A. 5); McGuire v. Commissioner, 84 F. 2d 431, 432 *148 (C.A. 7). Finally, we do not attach much significance to petitioners' argument that substantial repayments of the amount of the alleged loan indicates that the original advance was intended to create an indebtedness. It appears to us that the fluctuations in the "loan" account were more determined by the needs of the business as well as Lizak's personal needs [1] than by a recognition that the payments were required in connection with a binding obligation to repay the alleged loan. Though the day-to-day or month-to-month activity within the "loan" account during the years in issue has not been disclosed to us, the record more strongly indicates that Lizak intended his contribution in the form of a loan to ride with the ups and downs of the business rather than as a fixed obligation upon the corporation to repay the amounts advanced in any event. See Gilbert v. Commissioner, supra, 248 F. 2d at 406; Phil L. Hudson, 31 T.C. 574, 583; Wilfred J. Funk, 35 T.C. 42, 49. [2]
*149 2. The Commissioner has disallowed certain expenditures made by John Lizak, Inc. as not being ordinary and necessary business expenses within the meaning of section 162, I.R.C. 1954. Further, the Commissioner has determined that such expenditures, having been made for the personal benefit of the individual petitioners, constitute taxable income to them. We agree with the Commissioner in both respects. At issue are the following expenditures made by John Lizak, Inc., which were deemed to be for the personal benefit of the Lizaks: the purchase of a camera and a tape recorder; the payment of utility bills, fuel bills and real estate taxes on the personal residence; and the payment of the maintenance costs of corporate-owned automobiles which were used (at least until 1962) for the personal benefit of the Lizaks. Petitioners presented no convincing evidence to establish that the corporation was entitled to deductions for these amounts or that the amounts were not spent for the Lizaks' personal benefit. Lizak admitted moving his office to a building in downtown Palmer, Massachusetts, sometime around the time of incorporation of John Lizak, Inc. though he could *150 not remember the exact date. His testimony as to the continued use of his house thereafter for business purposes was loose and vague; such use may very well have been on a de minimus basis. As to the other items, Lizak's testimony was unclear and no substantiation was offered to support the deductions claimed. On the basis of petitioners' failure to bring forth satisfying evidence supporting the corporation's claimed deduction we must find for the Commissioner with respect to these items. The burden of proof has not been carried. Since petitioners were likewise unable to demonstrate that the corporate expenditures were not for the personal benefit of the individual petitioners, we find that such expenditures constituted taxable income to them. American Properties, Inc., 28 T.C. 1100, 1115, affirmed 262 F. 2d 150 (C.A. 9). Decisions will be entered for the respondent. 810 Footnotes
*. Calendar Year broken down January 1 - October 31 and November 1 - December 31↩
1. As shown by the evidence, Lizak was supporting a family which included his wife and three children (later increased to four), and his principal item of income was an annual salary from the corporation of $4,800, later increased to $6,000. ↩
2. Of course, only those withdrawals that are properly supported by earnings and profits of the corporation are taxable as dividends, and it has been virtually impossible for us to reconcile the amount of dividends charged to Lizak by the Commissioner with the schedule stipulated by the parties as an "analysis of the loan account" payable to Lizak (supra, p. 806↩). Moreover, that "loan account" does not appear to be entirely consistent within itself. However, since no issue has been raised as to the amount of the dividend properly chargeable to Lizak, assuming the absence of a bona fide loan, we must approve the determination of the Commissioner in this respect in view of the state of the record.