Mary J. LYNCH and Michael F. Lynch,
the Executor of the Estate of
Robert S. Lynch

v.

The **UNITED STATES** of America.

Civ. A. No. 14467.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 17, 1971.

Tranakos & Hurst, Atlanta, Ga., for plaintiff.

John W. Stokes, Jr., U. S. Atty., Julian L. Longley, Asst. U. S. Atty., Atlanta, Ga., Lawrence R. Jones, Jr., Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

EDENFIELD, District Judge.

In this tax refund case there are two questions:

(1) Were three "advances" made to the Ford Supply Company loans ("debt") or capital contributions ("equity")?

(2) If the "advances" were loans which created indebtedness, were the losses incurred by the late Robert Lynch upon the subsequent worthlessness of these debts "business bad debts"—which can be deducted as ordinary losses and carried back to previous years—or "nonbusiness bad debts"—which could only be set off as short term capital losses?

 Plaintiffs contend that the "advances" were loans which gave rise to business bad debts, and the Government contends that they were either capital contributions or that they were loans which gave rise to nonbusiness bad debts. Although the record in the case is flimsy—the corporate books cannot be located, the Government has found only one of the corporation's tax returns, and Robert Lynch is deceased—the court must rely on it in order to decide the "debt-equity" question since the facts are stipulated and the Fifth Circuit has held that as a result this question should not be submitted to the jury. Dillin v. United States, 433 F.2d 1097 (5th Cir. 1970); Berkowitz v. United States, 411 F.2d 818 (5th Cir. 1969).

The stipulated facts are that the late Robert S. Lynch, former president of the Atlantic Steel Company, purchased a 49% interest in Frank Ford and Associates, Inc. for $490 in June, 1959. The corporation's name was subsequently changed to Ford-Lynch Associates, Inc., and Lynch was named vice-president of both Ford-Lynch Associates and Ford Supply Company, Inc., a wholly-owned subsidiary. The companies acted as manufacturers' agents for the distribution of welding supplies and other industrial equipment.

On July 28, 1959, the Trust Company of Georgia made a loan to the Ford Supply Company in the amount of $25,000. The principal amount of the loan was increased to a total of $45,000 on September 28, 1959, the sum of which was collateralized by a total pledge of 4,700 shares of Atlantic Steel Company common stock owned by Lynch. The loan was evidenced by a note which carried interest at the rate of 8% per annum and was due 60 days after its execution, although apparently it was renewed periodically.

Although Ford Supply made some interest and principal payments on this note in 1960 and 1961, plaintiffs admit that the company became delinquent. The Trust Company then insisted that Lynch assume the debt and take over payment of the note. Lynch obtained a personal loan from the Trust Company in the amount of $41,250 with which he paid off the balance of $41,250 due on Ford Supply's note to the Trust Company on March 30, 1962. Ford Supply's note to the Trust Company was then endorsed without recourse by the Trust Company to Lynch. The parties have referred to the assumption by Lynch of the $41,250 debt owed by Ford Supply and the subsequent endorsement of the note as the first "advance" by Lynch of funds to Ford Supply.

The second "advance" began when Lynch obtained a personal loan in the amount of $25,000 from the First National Bank of Atlanta on October 12 and 26, 1959, the sum of which he turned over to Ford Supply on October 28, 1959. In return, Ford Supply signed a note to Lynch in the amount of $25,000 which bore no interest and which was due on demand after 90 days' notice.

Finally, on December 2, 1959, Lynch "advanced" $10,000 to Ford Supply in

return for which Ford Supply signed a note to him in that amount which carried interest at the rate of 6% per annum and was due on demand with 90 days' notice.

According to the stipulated facts, the books and records of Ford Supply reflect principal payments to Lynch in the amount of $2250 during 1962 and interest payments of $1105.25. On July 19, 1962 Lynch filed suit in Fulton County, Georgia on part of the notes from Ford Supply and sought damages of $41,250. He obtained a default judgment in 1964 which proved uncollectible. Lynch then claimed a business bad debt loss of $67,650 for the year 1964 which he said was composed of $41,250 due on the first "advance" to Ford Supply, $23,500 due on the second, and $2,900 due on the third. The Commissioner disallowed this deduction, and Lynch paid the additional taxes, filed timely claims for refund which were not granted, and his estate instituted the instant action under 28 U.S.C. § 1346(a) (1970).

At the outset it should be noted that the debt-equity question in tax cases has been frequently litigated yet, as Judge Goldberg of the Fifth Circuit has observed, no simple test for its categorical resolution has emerged. Tyler v. Tomlinson, 414 F.2d 844, 847 (5th Cir. 1969). Indeed, a perusal of the cases in this circuit alone reveals a lack of decisional uniformity. *Compare* Dillin v. United States, *supra*; Tyler v. Tomlinson, *supra*; Berkowitz v. United States, *supra*; Curry v. United States, 396 F.2d 630 (5th Cir.), cert. denied, 393 U.S. 967, 89 S.Ct. 401, 21 L.Ed.2d 375 (1968); United States v. Henderson, 375 F.2d 36 (5th Cir.), cert. denied, 389 U.S. 953, 88 S.Ct. 335, 19 L. Ed.2d 362 (1967); United States v. Snyder Brothers Co., 367 F.2d 980 (5th Cir. 1966), cert. denied, 386 U.S. 956, 87 S.Ct. 1021, 18 L.Ed.2d 104 (1967); Montclair, Inc. v. C. I. R., 318 F.2d 38 (5th Cir. 1963); Aronov Construction Co. v. United States, 223 F.Supp. 175 (M.D.Ala.1963), aff'd., 338 F.2d 337 (5th Cir. 1964), (all of which held on the side of equity), *with* Harlan v. United States, 409 F.2d 904 (5th Cir. 1969); Tomlinson v. 1661 Corp., 377 F. 2d 291 (5th Cir. 1967); Rowan v. United States, 219 F.2d 51 (5th Cir. 1955), all of which held on the side of debt).

In its most recent appraisal of the question, the Fifth Circuit listed thirteen factors which ought to be considered by a court on this question but which by no means are binding fiats:

"(1) the names given to the certificates evidencing the indebtedness;

(2) the presence or absence of a maturity date;

(3) the source of the payments;

(4) the right to enforce the payment of principal and interest;

(5) participation in management;

(6) a status equal to or inferior to that of regular corporate creditors;

(7) the intent of the parties;

(8) 'thin' or adequate capitalization;

(9) identity of interest between creditor and stockholder;

(10) payment of interest only out of 'dividend' money;

(11) the ability of the corporation to obtain loans from outside lending institutions;

(12) the extent to which the initial advances were used to acquire capital assets; and

(13) the failure of the debtor to pay on the due date or to seek a postponement." In re Indian Lake Estates, Inc., 448 F.2d 574, 578–579 (5th Cir. 1971).

Although plaintiffs contend that the preponderance of these factors falls on the side of debt in the instant case, the court's evaluation of these factors and of the entire case impels it to an opposite conclusion.

It is important to first consider the financial picture of the company as re-

vealed in the pleadings. The comparative consolidated balance sheets for the fiscal years ending July 31, 1959 and July 31, 1960 show the following:

| Assets | 7–31–59 | 7–31–60 |
|---|---|---|
| Cash on hand and on deposit | $ 3,721.69 | $ 1,747.00 |
| Accounts receivable—trade | 34,070.92 | 29,539.86 |
| Merchandise inventory | 14,302.53 | 13,549.94 |
| Prepaid insurance and interest | 198.13 | 2,676.17 |
| Fixed assets—net | 7,009.27 | 6,719.17 |
| Advances to affiliate | 139,287.69 | 246,633.28 |
| Advances to officers and employees | 1,993.39 | 1,049.86 |
| Total | $200,583.62 | $301,915.28 |

| Liabilities and Capital | 7–31–59 | 7–31–60 |
|---|---|---|
| Notes payable | $ 65,244.04 | $ 57,242.22 |
| Accounts payable—trade | 27,079.04 | 33,577.50 |
| Accrued taxes—other than income | 799.49 | 1,565.16 |
| Notes payable—officers | 115,799.87 | 237,662.32 |
| Common stock | 900.00 | 990.00 |
| Deficit | ( 9,238.82) | ( 29,121.92) |
| Total | $200,583.62 | $301,915.28 |

It can readily be seen that the company was starved for capital and in poor shape, even though, as plaintiffs urge, it was essentially a sales operation which did not need a great deal of capital. The ratio of outstanding debt to invested capital was approximately 200:1 in 1959 and rose to approximately 300:1 by 1960. Lynch and the company must have been aware of this inordinately high debt-equity ratio in 1959 when two of his "advances" were made and were probably aware the ratio would go even higher. Given the nature of the business, Ford Supply had no need for fixed, capital assets. But the money which the company sought and obtained in 1959 was apparently needed to provide it with their equivalent for this type of business—working capital. Under these circumstances, the undercapitalization of Ford Supply is important evidence that a genuine indebtedness to Lynch was not incurred in 1959. *See* In re Indian Lake Estates, Inc., *supra,* at 579; Tyler v. Tomlinson, *supra,* 414 F.2d at 848–849; United States v. Henderson, *supra,* 375 F.2d at 40.

More evidence to support that conclusion can be derived from an examination of the two 1959 notes themselves. Although they were in the proper form, the notes did not have maturity dates or enforcement provisions, nor were they linked to a sinking fund from which payments of interest and principal were to be made. The absence of such traditional creditor safeguards leads the court to conclude that the parties were motivated by corporate, rather than creditor, considerations. Furthermore, since Lynch had a 49% interest in the company in 1959, he must have been aware of its precarious financial condition and realized that the exercise by him of the demand provision in the notes would have seriously jeopardized it. As a result Lynch could not have entertained serious expectations of repayment on the two notes. Indeed, plaintiffs have made no showing that Lynch ever attempted to secure timely payments of the outstanding interest and principal on the notes, and, as it turned out, Ford Supply repaid only $8600 of the $35,000 due on them.

The first "advance" presents a bit more difficulty. As already noted, this "advance" began in 1959 as a bank loan in the amount of $45,000 from the Trust Company to Ford Supply which was collateralized by stock which Lynch

owned. Plaintiffs strenuously contend that a bank loan simply cannot become a capital contribution. The court agrees that the bank loan by the Trust Company in 1959 was a bona fide loan which created an indebtedness flowing from the company to the bank. Nevertheless, it is clear that by 1962 Ford Supply could not make payment on the note and the bank's confidence in the company came to an abrupt end. The bank's demand that Lynch assume the company's debt himself and pay off the balance of the debt—which he did with the proceeds of a personal loan from the very same bank—is evidence that Ford Supply no longer had the ability to obtain loans from outside lending institutions. Despite this, Lynch assumed the company's outstanding debt and thereby "advanced" the balance of $41,500 due on the note to Ford Supply. Lynch was under no legal obligation to do this, and he was fully aware of the perilous financial health of the company. His action appears more to be the action of an investor rather than a creditor. In terms of economic reality, the assumption by Lynch of Ford Supply's outstanding debt to the bank and the resultant "advance" by him of that outstanding amount to the company appears to be an equity transaction in which Lynch made a capital contribution of $41,250 to Ford Supply. As with the other two notes, the pleadings do not reveal any efforts on the part of Lynch to secure repayment of this "advance" and, in fact, no repayment at all was received.

Plaintiffs have the burden of proving that the three "advances" in question represented indebtedness rather than equity. Berkowitz v. United States, *supra*, 411 F.2d at 820. The court, having evaluated the record, finds that plaintiffs have not met their burden. As a result, the "advances" must be deemed capital contributions, which means the Commissioner properly disallowed the deduction by Lynch of these amounts as business bad debts.

As the parties have recognized, the resolution by the court of the debt-equity question in favor of the Government renders the second question moot and obviates the need for a trial. The Government shall prevail as a matter of law.

For the reasons set out above the complaint in the above-styled case is dismissed.