**TURNER TIRE COMPANY, Inc.**

v.

**UNITED STATES of America.**

**MOTOR PARTS AND SUPPLY COMPANY, Inc.**

v.

**UNITED STATES of America.**

**Bert S. TURNER**

v.

**UNITED STATES of America.**

**Suzanne W. TURNER**

v.

**UNITED STATES of America.**

**Civ. A. Nos. 69–211 to 69–214.**

United States District Court,
M. D. Louisiana.

June 23, 1972.

Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for plaintiffs.

Fred B. Ugast, Acting Asst. Atty. Gen., Ben A. Douglas, Charles G. Barnett, Attys., Department of Justice, Dallas, Tex., for United States of America.

E. GORDON WEST, District Judge:

These four suits against the United States for refund of federal income taxes paid under protest by plaintiffs have been consolidated for decision. The plaintiffs are Bert Turner, hereafter referred to as "Bert," and his wife Suzanne, as individuals, and two Louisiana corporations, Motor Parts and Supply Co., Inc., and Turner Tire Co., Inc., whose stock is entirely owned by Bert and Suzanne. The corporations contend that claimed business bad debt deductions should not have been disallowed and reclassified by the Internal Revenue Service as constructive dividends. Bert and his wife (who is involved only because of Louisiana community property laws) also contest the "constructive dividends" finding since it increases their

gross income, and they also contest a finding that certain advances made by Bert to another of his corporations, Alabama Parts Corp., were contributions to capital rather than loans. The primary concern of this Court is what effect should be given to certain transactions that took place among the plaintiffs and the third corporation, Alabama Parts Corp., also owned by Bert Turner.

The pertinent facts have been derived from depositions, exhibits and stipulations submitted by the parties. In 1954, Bert, who was in the auto parts and supply business, incorporated his proprietorship under the name of Turner Tire Company, Inc. (hereinafter Turner Tire), pursuant to the laws of Louisiana. In 1955, Bert incorporated a similar business, Motor Parts and Supply Company, Inc. (hereinafter, Motor Parts), also in Louisiana. Bert and his wife are the sole shareholders of both corporations. The initial capitalization for each was $10,000, and it was increased to $25,000 about 1960. From time to time Bert personally made advances to these corporations for working capital and for other purposes. These advances were not represented by promissory notes and no interest on them was ever paid to Bert. The cumulative advances (less repayments) at times amounted to as much as $20,000 per corporation. They were all repaid. Bert also endorsed notes executed by these corporations in favor of other lenders.

In 1960, Bert decided to extend his business into Alabama and caused Alabama Parts Corporation to be incorporated under that state's laws. Alabama Parts was created separately from the two Louisiana corporations despite their similar business interests to avoid burdensome tax consequences which would otherwise occur. The initial capitalization of Alabama Parts was $10,000 and this was increased to $25,000 in 1963. Unfortunately Bert continued to use the same type of informal business practices that he used with Turner Tire and Motor Parts. The lack of formality was especially evident with respect to advances

made by Bert and by the two Louisiana corporations to Alabama Parts. In 1960, Bert advanced more than $18,000, Turner Tire advanced more than $14,000, and Motor Parts advanced more than $20,000 to Alabama Parts. These loans were necessary for Alabama Parts to carry on its operations. In 1961, advances to Alabama Parts amounted to more than $40,000 from Bert, almost $20,000 from Turner Tire and almost $7,000 from Motor Parts. All the money was used for similar purposes. Bert did not advance any more money until 1964, when he advanced $2,000, while Turner Tire and Motor Parts continued to advance varying amounts until 1965. In August of 1965 Alabama Parts was closed down and its assets sold to Genuine Parts Corporation, one of the principal suppliers of all Bert's auto supply corporations. A net price of $37,034.85 was paid by Genuine Parts to Bert. After that payment the situation of the parties was as follows:

Alabama Parts was no longer in existence; there were no remaining assets;

Turner Tire had advanced $94,469.65 to Alabama Parts and had been repaid $54,571.26 for a net deficit of $39,898.-39;

Motor Parts had advanced $66,149.91 to Alabama Parts and had been repaid $43,846.74 for a net deficit of $12,303.-17; and

Bert had advanced $60,830.80 to Alabama Parts and had been repaid $40,266.72 for a net deficit of $20,664.-08.

When Turner Tire filed its 1965 tax return it claimed a bad debt deduction for the amount of its deficit causing a net operating loss which was carried back to previous years. Motor Parts did the same with its deficit on the income tax return filed for Motor Parts' fiscal year ending January 31, 1966. The Internal Revenue Service disallowed the claimed bad debt deductions and adjusted the corporations' income tax accordingly. The corporations protested the adjustments to no avail and paid the full

amount of the deficiencies, plus interest. Claims for refunds were disallowed and these suits followed. Turner Tire claims judgment against the United States in the amount of $12,585.03, plus interest, and Motor Parts makes such claim in the amount of $4,059.66, plus interest.

Bert and his wife filed separate income tax returns for 1965 which reflected a loss of over $20,000 on their advances to Alabama Parts plus the fact that their stock in Alabama Parts was now worthless. The Internal Revenue Service did not accept the loss; rather it adjusted the returns on the basis of classifying certain of the business bad debts claimed by Turner Tire and Motor Parts as constructive dividends to Bert and his wife. Such classification resulted in increased gross income for them and thus increased their taxes. The extra tax was paid under protest in 1969, claims for refunds were denied and suits were filed. Bert and Suzanne each claim judgment against the United States in the amount of $12,238.88, plus interest.

In sum, the plaintiffs contend that the deficits resulting from Alabama Parts' inability to repay all its debts are business bad debts which became uncollectible in 1965. The government concedes that the advances by Turner Tire and Motor Parts were bona fide loans but contends that Bert's advances were contributions to equity, not loans. If so, the money obtained by selling Alabama Parts should have been paid to Turner Tire and Motor Parts rather than to Bert. Since the corporations permitted the money to be paid to Bert, the government continues, they should not be able to deduct it as business bad debts because they could have collected it; rather, the payment should be considered as constructive dividends increasing Bert's income. In order to properly approach the problem this Court must decide whether Bert's advances were contributions to capital or loans; whether Bert subordinated his advances to those of Turner Tire and Motor Parts; and whether the debts owed to the Louisiana corporations became worthless in 1965.

The total amount of money advanced by the plaintiffs to Alabama Parts during its existence was $211,550.36 in portions as set forth above. All these advances were represented as payables in Alabama Parts' books and corresponding opposite entries were used by the other parties. No promissory notes or other paper was ever issued and no interest was ever paid by Alabama Parts for use of this money. Partial repayments were made to each party although, as discussed below, the timing of such repayments was quite different. Bert testified that the advances by Turner Tire and Motor Parts to Alabama Parts were intended as loans by the directors of all three corporations, which in effect means that Bert himself had such intentions. Also, Bert intended that his personal advances be the same as those of the corporations, i.e., loans. Thus, the terms and conditions on Bert's advances, if any, were the same as those on Turner Tire's and Motor Parts' advances.

The reason Turner Tire and Motor Parts made advances to Alabama Parts was to expand the total operations of all three companies and thereby gain the advantage of large-volume discounts. Of course, Bert himself was intimately connected with the operations of his corporations and with the success of the system as a whole. Also, Bert was concerned over the fact that an unrelated business which he was operating was in serious financial difficulty, and he wanted to have something to fall back on in case this other business failed. The creation of Alabama Parts was supposed to strengthen the whole network of stores which Bert had set up. Even though this strategy did not succeed, it is evident that Turner Tire, Motor Parts and Bert all had the same motive for making advances to Alabama Parts. Finally, all the advances, from whatever source, were used by Alabama Parts for the same or similar purposes.

Despite all the similarities of the advances mentioned above, the government

contends that those advances made by Bert Turner personally should be treated differently from those made by Turner Tire and Motor Parts. The government concedes that the advances made by the Louisiana corporations were bona fide loans, but urges that Bert's be classified as contributions to capital.

■ There have been many cases concerned with the question of whether an advance is a loan or a contribution to capital and there have been just as many "tests" used to decide that question. Indeed, the number of factors which may be considered has been increased time and again as new situations continue to arise. This of course is a natural result of the fact that no two cases will be the same so no one test will be sufficient—each case must be decided on its own unique fact situation. Berkowitz v. United States, 411 F.2d 818, 820 (CA 5–1969). Neither is any single factor important enough for a decision to be made based on it alone. "The object of the inquiry is not to count factors, but to evaluate them. No single factor can be controlling." Tyler v. Tomlinson, 414 F.2d 844, 848 (CA 5–1969). The simple truth is that each case must be viewed independently and the Court has considerable discretion in deciding what factors will be considered and how much weight each of those factors will be given.

■ When deciding a tax case there are certain well known general principles which must be kept in mind. For instance, it is not improper for a taxpayer to strive to minimize his tax liability as much as possible within the bounds of the law. Rupe Investment Corporation v. Commissioner of Internal Revenue, 266 F.2d 624, 629 (CA 5–1959). However, a sham or subterfuge must not be permitted to disguise improper tax reductions. Blackstone Realty Company v. Commissioner of Internal Revenue, 398 F.2d 991, 996 (CA 5–1968). In other words, mere form shall not be permitted to override the true nature of a transaction. Commissioner of Internal Revenue v. Court Holding Company, 324 U.S. 331, 65 S.Ct. 707, 89 L. Ed. 981 (1945). It would seem by the same token, however, that lack of form should not be allowed to negate what is in reality present.

The government relies heavily on the fact that many of the criteria cited in Berkowitz v. United States, 411 F.2d 818 (CA 5–1969), if applied to this case, would indicate that Bert's advances were not loans. The most prominent indicia would be the absence of any note or other paper evidencing indebtedness; the lack of any interest payments; and an alleged subordination by Bert of his advances to those of Turner Tire and Motor Parts. To this the government would add the lack of security for the indebtedness; the fact that the advances were necessary for Alabama Parts to continue its operations; and Bert's failure to insist that he be repaid before Alabama Parts could afford to do so. Finally, the government cites Tyler v. Tomlinson, 414 F.2d 844 (CA 5–1969), for its emphasis on thin capitalization as a key factor in deciding whether Bert's advances were loans or equity.

■■ On the other hand, Bert emphasizes the importance of his intent to advance the money as loans, not as additions to capital. His testimony is clear that he intended to loan money to Alabama Parts both personally and through his Louisiana corporations. Intent has been held to be a very important factor in deciding the debt-equity characterization of advances. Rowan v. United States, 219 F.2d 51 (CA 5–1955). All the relevant circumstances surrounding the transaction should be considered when determining what the true intent is and lack of formalities does not automatically prevent advances from being classified as loans. Irbco Corporation v. Commissioner, 25 T.C.M. 359 (1966). Again, however, intent alone must not rule over substance and it will be important to decide whether the circumstances as a whole conflict with Bert's testimony.

It is true that a superficial consideration of all the factors cited by the government would strongly indicate that Bert's advances should not be considered loans. But when compared with the established pattern of business activity engaged in by Bert Turner in his prior ventures and with the actions of Turner Tire and Motor Parts in their concededly bona fide loans to Alabama Parts, many of those factors lose their probative value.

■ The capitalization for Alabama Parts followed the same pattern as was used in capitalization of Turner Tire and Motor Parts, namely an initial sum of $10,000 subsequently increased to $25,000. All three corporations were engaged in the same business activity. Turner Tire and Motor Parts had survived and grown over the years with their capitalization—there was no reason for Bert to think that any higher amount would be needed for Alabama Parts. He had made studies of the auto parts supply market and the quality of competition in Mobile, Alabama, and had decided that expansion was a good business venture. Hindsight is a dangerous basis to use in evaluating anything, including how sufficient a debt-equity ratio was. Rowan v. United States, 219 F.2d 51 (CA 5-1955). Under the circumstances of this case it does not appear that there existed such thin capitalization as to be an important legitimate factor in the debt-equity question.

The lack of financial formalities indicates a lackadaisical attitude which is to be deplored and it causes this Court to subject the transactions to close scrutiny. But such lack of form does not mean that the advances cannot be loans. Indeed, the advances by Turner Tire and Motor Parts are bona fide loans and yet most of the above factors would be applicable to them. The government attempts to distinguish Bert's advances from those of the Louisiana corporations on two grounds; first, that only Bert legally held an equity ownership in Alabama Parts, and second, that Bert consciously and voluntarily subordinated his claims to those of Turner Tire and Motor Parts.

■ As to the equity ownership, Bert, of course, was the sole stockholder of Alabama Parts, just as he was sole owner of Turner Tire and Motor Parts. The absence of any equity ownership in Alabama Parts by the two Louisiana corporations is presented by the government as a distinguishing factor in their advances. However, there was a very good reason for this arrangement—if either Turner Tire or Motor Parts, as foreign corporations under Alabama law, held any stock in the Alabama corporation they would be subject to a severe tax burden. Therefore, on advice of counsel, Bert reasonably elected to form Alabama Parts himself. There is no reason to infer from that act an improper motive on Bert's part in making advances to the corporation. Certainly a stockholder may make loans to his corporation. And since Bert was in reality forced by Alabama tax law to incorporate Alabama Parts personally this Court does not feel that Bert's equity ownership is sufficient to differentiate his advances from those of his other corporations.

■ The government also mentions that Bert's advances were proportionate to his stock ownership and that this is an important factor according to *Tyler*, supra, 414 F.2d at page 849. But this is a specious argument. By virtue of the fact that he was the sole stockholder, *any* advance by Bert would be "proportionate" to his stock ownership. In *Tyler*, two brothers owned nearly equal interests in a business and their advances were roughly proportionate to those interests. In a single owner situation the "proportionate advances" factor is probative of nothing. Therefore the fact of Bert's equity ownership as compared to the lack of such ownership by Turner Tire and Motor Parts is, in this Court's opinion, unimportant.

The other factor cited to differentiate Bert from his Louisiana corporations is an alleged subordination by him of the

debt owed him by Alabama Parts to those owed by Alabama Parts to Turner Tire and Motor Parts. The government contends that this alleged subordination should indicate that Bert's advances were not loans. Furthermore, even if Bert's advances are deemed to be loans the government relies on the subordination factor to argue, 1) that Turner Tire and Motor Parts should have been repaid before Bert was, and 2) failure to do this resulted in a constructive dividend being paid to Bert by Turner Tire and Motor Parts.

■ The government bases its subordination argument on the schedule of payments and repayments of the advances in this case. It shows that Bert advanced upwards of $60,000 in 1960 and 1961 and received minimal repayments (about $3,000) prior to the sale of Alabama Parts to Genuine Parts in 1965. All the proceeds from that sale were applied to the unpaid balance of Bert's advances. The schedule also shows that advances to Alabama Parts were made by Turner Tire and Motor Parts from 1960 to 1965 and these advances were repaid more evenly. The government would infer from the repayment schedule that since Bert had full control of all the corporations he voluntarily and consciously subordinated his interests to those of Turner Tire and Motor Parts. It is not disputed that Bert voluntarily and consciously caused repayments to be made to the Louisiana corporations before any substantial repayment was made to him, but any subordination by Bert of his right to repayment is denied. This Court is of the opinion that despite the relative inequities of repayment prior to the sale of Alabama Parts, Bert never intended to and did not in fact subordinate his personal rights of reimbursement to those of his Louisiana corporations.

■ Bert testified that the repayments were deliberately made to Turner Tire and Motor Parts but not to Bert himself prior to the sale of Alabama Parts. However, he stated it was not the object of the repayment plan to give the Louisiana corporations' claims an elevated status or priority vis a vis Bert's claims. It is worthy of note that a great majority of the repayments to the corporations (78% of the repayments to Turner Tire and 66% of the repayments to Motor Parts) occurred in 1964 and 1965, the last two years of Alabama Parts' existence. Also, it is clear from the depositions, and unrefuted in any way, that the disbursements to Turner Tire and Motor Parts during 1964 and 1965 were based on the business needs of each party and the financial wellbeing of Bert's operations as a whole. Bert was prompted by overall business considerations to make the repayments as he did. Actually, if Bert had wanted to, he could have made strictly pro-rata repayments to all three parties throughout Alabama Parts' existence and then reloaned the money he received personally to his Louisiana corporations. But it is senseless to require redundant transactions for the sake of form when, as here, all the parts are integrated into one system and no third parties are involved. Furthermore, the repayments were not all in the form of cash. Since all three corporations were involved in the same business their inventories were similar and highly exchangeable. It was only natural that some of the repayments by Alabama Parts would be in the form of inventory and certainly such repayments would have been of no use to Bert personally. Again, it seems clear that the distribution of repayments was based on reasonable business discretion with no attempt to give one of these creditors priority over the other.

■ In view of the above it is the opinion of this Court that despite the lack of formal indicia of debt, the advances of Bert Turner to Alabama Parts were loans, not contributions to capital. The business history of similar advances by Bert to Turner Tire and Motor Parts; the reasonableness of the repayment schedule to all three creditors; and the intention by Bert to make loans, not contributions to capital, are all in-

dicative of the true nature of the advances. The similarity of Bert's advances to the concededly bona fide loans of Turner Tire and Motor Parts and the lack of any substantial reason to differentiate between the two sets of transactions is of some importance. All the advances were made with the same intention, informality, expectation of repayment, bookkeeping entries, and lack of interest payments, and they were used for the same or similar purposes. Bert's equity ownership and the lack thereof by Turner Tire and Motor Parts was necessitated by Alabama's burdensome tax laws. He did not subordinate his personal rights to those of Turner Tire or Motor Parts when he reasonably caused repayments to be made in such a way as would hopefully best benefit his overall operations. In short, this Court agrees with the government that the advances of Turner Tire and Motor Parts are bona fide loans, and holds that Bert's personal advances should be similarly classified.

The government urges that even if Bert's advances are loans, the net sales price paid by Genuine Parts (about $37,-000) should have been paid first to Turner Tire and Motor Parts, and if any was left over, then to Bert. This argument is based on the same alleged subordination that was discussed above and for the same reasons it is rejected.

In the alternative the government contends that the $37,000 net sales price should have been pro-rated to the three parties in proportion to the amount owed to each by Alabama Parts. If this were done Bert would be entitled to about $19,500, Turner Tire would receive about $13,500, and about $4,000 would go to Motor Parts. Such a distribution would be equivalent to "freezing" the situation as of the time of the sale of Alabama Parts and paying off the outstanding debts pro rata with no consideration being given to repayments made prior to the sale. Plaintiffs, on the other hand, state that the entire $37,000 was paid to Bert for the purpose of equalizing pro rata the repayments

given to the parties over the entire period of Alabama Parts' existence. In other words, since Turner Tire and Motor Parts were partially repaid before Alabama Parts was sold the net sales price was paid to Bert to "even things up."

According to Bert's depositions Alabama Parts had a paper in January of 1965 approximately $93,000, after payment of secured creditors and the Louisiana National Bank, which could be applied to the unsecured loans of Turner Tire, Motor Parts, and Bert Turner. Those unsecured loans totalled almost $157,000. The repayments schedule shows that in 1965 Alabama Parts repaid Turner Tire and Motor Parts approximately $28,000 each, and repaid Bert the $37,000 from the sale of it to Genuine Parts. The question is whether this $37,000 should be considered a separate fund to be disbursed with no acknowledgment of previous payments or whether it should be integrated into the repayments plan as a whole. Neither the government nor the plaintiffs have cited any authority directly on the point and this Court has found none. Bert says the proceeds were paid to him in an attempt to achieve pro rata or equal treatment for the three parties concerned. The statistics tend to bear this out. In the end, Motor Parts received a bit more than its share at the expense of Turner Tire, but Bert Turner himself received almost the exact pro rata portion to which he was entitled. Bert's advances amounted to 28.8% of the total advanced by the three parties from 1960 to 1965 and he received 29.1% of Alabama Parts' total repayments to them. There is certainly no indication that Bert was trying to unfairly enrich himself at the expense of his corporations. It would seem that the most equitable way to repay the debts in this case would be to take into consideration all the prior advances and repayments and try to disburse the money proportionately to each party's advances. In view of the fact that all of the advances by the three parties should be considered as loans with the same level of priority,

**642**

and keeping in mind the overall repayment schedule which resulted in Bert receiving only his pro rata share of Alabama Parts' repayments, it is the opinion of this Court that the payment of $37,000 to Bert, to the exclusion of Turner Tire and Motor Parts, should be permitted.

The government's final contention is that Bert received a constructive dividend from Turner Tire and Motor Parts when the $37,000 was paid to him. This theory again requires a finding that Bert's advances were equity investments or that Bert subordinated his personal loans to those of the Louisiana corporations. In other words, there must be some reason that demands that Turner Tire or Motor Parts be repaid in full prior to any repayment being made to Bert. There has been so such reason presented and no authority cited which would require that order of repayment. Alabama Parts ceased to exist in 1965. All of its assets were sold and the proceeds therefrom disbursed. Any debts owed by it had to become worthless once this was accomplished. Turner Tire and Motor Parts have not been shown to have had any right to demand payment from Alabama Parts after the corporation was sold. Since there was nothing which the Louisiana corporations could have collected, their deficits became worthless in 1965 and were properly shown as business bad debts on their income tax returns. Since the contentions supporting the government's "constructive dividend" theory have been considered earlier and have been rejected, that theory is not acceptable.

In conclusion, it is the opinion of this Court that Bert's advances to Alabama Parts were bona fide loans; that Bert did not subordinate his rights to those of Turner Tire and Motor Parts; that the schedule of repayments was permissible; and that no constructive dividends were realized by Bert. It is the conclusion of this Court that the government was in error when it rejected losses claimed by both Turner Tire and Motor Parts for worthless debts incurred in 1965, and it was further in error in imputing constructive dividends from Turner Tire and Motor Parts to Bert and his wife. Therefore, judgment will be entered in favor of the plaintiffs as prayed for and in accordance with the views herein expressed.